## IN THE MATTER OF RAMON GARAY, M.D.

Argued January 25, 1982—Decided April 29, 1982.

---

*Ivan J. Punchatz*, Deputy Attorney General, argued the cause for appellant and cross-respondent Division of Medical Assistance and Health Services, Department of Human Services (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel).

*John R. Schwartz* argued the cause for respondent and cross-appellant Ramon Garay, M.D. (*Miller, Hochman, Meyerson & Schaeffer*, attorneys).

The opinion of the Court was delivered by

PASHMAN, J.

Dr. Ramon Garay was convicted of filing 58 false Medicaid claims totalling $1,290.20. After the criminal proceedings, the State Division of Medical Assistance and Health Services, pursuant to *N.J.S.A.* 30:4D–7(h) and 30:4D–17(e), directed him to pay a penalty of $121,603.41. This amount included (1) recovery of the money taken plus interest, (2) treble damages and (3) a $2,000 penalty for each claim. All these penalties except for recovery of the amount taken were added by a 1976 amendment to the Medicaid statute which became effective after Garay's fraudulent conduct but before these proceedings commenced.

Respondent urges that retroactive application of these penalties violates the *ex post facto* law prohibitions in the United States and New Jersey Constitutions, *U.S.Const.*, Art. 1, § 10, cl.

1; *N.J.Const.* (1947), Art. 4, § 7, ¶ 3. He further argues that assessment of these penalties after his criminal trial constitutes double jeopardy, in violation of *U.S.Const.*, Amend. 5; *N.J. Const.* (1947), Art. 1, ¶ 11. Third, he contends that the excessive penalty constitutes cruel and unusual punishment, *U.S.Const.*, Amend. 8; *N.J.Const.* (1947), Art. 1, ¶ 12. Finally, Garay claims that the statutory penalties are fundamentally unfair as applied to him and therefore violate the due process clause, *U.S.Const.*, Amend. 14.

The Appellate Division reversed the penalty of $2,000 per claim as fundamentally unfair, but affirmed the other penalties assessed.

We hold that these penalties do not violate the Constitutional prohibitions against *ex post facto* laws, double jeopardy and cruel and unusual punishment. We do not reach the due process argument. Instead, we hold that the Director of the Division of Medical Assistance and Health Services had discretion to seek less than the full penalty authorized by statute. Since the Director did not use his discretion to determine a reasonable penalty within the statutory limits, we remand so that he may do so.

## I

Between 1970 and 1973, Doctor Ramon Garay filed 58 false Medicaid claims for services that he did not perform. He received a total of $1,290.20 on these illegal claims. On July 28, 1975, Garay was indicted and charged with twenty counts of Medicaid fraud,[1] *N.J.S.A.* 30:4D–17, and one count of obstruction of justice, *N.J.S.A.* 2A:85–1. He was found guilty in a jury trial on October 21, 1976. When committed, these acts were a misdemeanor, *N.J.S.A.* 30:4D–17, punishable by three years'

---

[1]Two of these counts were later dismissed by the State.

imprisonment and a $1,000 fine.[2] *N.J.S.A.* 2A:85–7. Garay received 19 concurrent jail terms of 18 months and a $500 fine on each count for an aggregate of $9,500, but the entire prison term was suspended. Garay was required to pay the fine and serve three years probation. In addition, the State Board of Medical Examiners revoked his medical license.

The Appellate Division affirmed the conviction in 1978, and we denied certification, 77 *N.J.* 484 (1978).

After Garay's conviction, the State Division of Medical Assistance and Health Services (Division) began proceedings to recover the civil penalties provided by the 1976 amendments. Prior to those amendments, the only civil remedy available was recovery of the overpayment. The amendments added *N.J.S.A.* 30:4D–17(e),[3] which provides:

> Any person, firm, corporation, partnership, or other legal entity who violates the provisions of any of the foregoing subsections of this section shall, in addition to any other penalties provided by law, be liable to civil penalties of (1) payment of interest on the amount of the excess benefits or payments at the maximum legal rate in effect on the date the payment was made to said person, firm, corporation, partnership or other legal entity for the period from the date upon which payment was made to the date upon which repayment is made to the State, (2) payment of an amount not to exceed three-fold the amount of such excess benefits or payments, and (3) payment in the sum of $2,000.00 for each excessive claim for assistance, benefits or payments.

The Division demanded that Garay pay $121,603.41 in civil penalties, including (1) the excess payment of $1,290.20;[4] (2) $442.61 in interest on the overpayment to June 15, 1977; (3)

---

[2]The 1976 amendments to the Medicaid statute, which went into effect 12 days before the trial, made Medicaid fraud a high misdemeanor and raised the possible fine to $10,000. *L.*1976, *c.* 89, § 2. In his criminal trial, Garay was, of course, tried and sentenced pursuant to the statute as it existed at the time of his illegal conduct.

[3]This provision was originally codified at *N.J.S.A.* 30:4D–17(c), but was redesignated subsection (e) by *L.*1979, *c.* 365. We will refer to the provision as it is currently codified, subsection (e).

[4]Recovery of the amount of the overpayment is allowed under *N.J.S.A.* 30:4D–7(h).

$3,870.60 in treble damages; and (4) $2,000 per claim ($116,000). Garay requested a hearing to determine his civil liability.

The Director of the Division of Medical Assistance and Health Services (Director) decided the case on stipulated facts. He found that Garay owed the entire $121,603.41 plus interest. The Director noted that *L.*1976, *c.* 89, § 3 stated that the civil penalty provisions "shall apply to all pending and subsequent judicial and administrative proceedings." Thus, he properly concluded that they apply to events that occurred prior to the effective date of the 1976 amendments.[5] He declined to rule on the constitutional issues raised by Garay.

The Appellate Division reversed the penalty of $2,000 per claim, holding that on the facts of this case, retroactive application of that penalty would be "harsh and oppressive" and "fundamentally unfair." Since the average false claim was only $22.25, the penalty imposed was nearly 100 times the amount taken. Otherwise, the court rejected Garay's constitutional claims on the ground that they were not applicable to civil penalties.

We granted cross-petitions for certification. The State challenges the Appellate Division's decision to overturn the $116,000 penalty. Secondarily, the State questions certain other Appellate Division actions concerning the amount of the penalty.[6] Garay defends the Appellate Division result and re-asserts his *ex post facto*, double jeopardy and cruel and unusual punishment claims.

---

[5]Garay does not now dispute that the civil penalties were intended to be retroactive.

[6]The Appellate Division held that the State could not recover the overpayment *and* assess a penalty of three times that amount. Rather, the treble damages recovery was held to include the initial recovery of the overpayment. Also, the court disallowed all interest on the overpayment accruing after June 15, 1977. The State contests both rulings.

## II

■ At the outset, we hold that the penalty provisions of *N.J.S.A.* 30:4D–17(e) are civil remedies. Therefore the United States and New Jersey constitutional protections against *ex post facto* laws, double jeopardy and cruel and unusual punishments do not apply.

■ There is no dispute that the constitutional ban against the passage of *ex post facto* laws applies only to criminal laws. *Galvan v. Press,* 347 *U.S.* 522, 531, n.4, 74 *S.Ct.* 737, 743, n.4, 98 *L.Ed.* 911 (1954); *Calder v. Bull,* (U.S.) 3 *Dall.* 386, 1 *L.Ed.* 648 (1798); *United States v. Gianoulis,* 183 *F.*2d 378, 380 (3d Cir. 1950); *The State, Bonney v. Collector of Bridgewater,* 31 *N.J.L.* 133, 135 (Sup.Ct.1864). Similarly, the constitutional provisions concerning cruel and unusual punishment have been held to apply only to penal sanctions. *Ingraham v. Wright,* 430 *U.S.* 651, 97 *S.Ct.* 1401, 51 *L.Ed.*2d 711 (1977); *In re Quinlan,* 70 *N.J.* 10, 37–38 (1976). Finally, the double jeopardy provisions of both constitutions permit imposition of both criminal and civil penalties for the same act or course of conduct. *One Lot Emerald Cut Stones v. United States,* 409 *U.S.* 232, 235–36, 93 *S.Ct.* 489, 492, 34 *L.Ed.*2d 438 (1972); *Helvering v. Mitchell,* 303 *U.S.* 391, 399, 58 *S.Ct.* 630, 633, 82 *L.Ed.* 917 (1938); *Orange Taxpayers Council, Inc. v. Orange,* 83 *N.J.* 246, 261–62 (1980). Thus, the dispositive issue for each of the constitutional claims raised is whether the penalty provisions in *N.J.S.A.* 30:4D–17(e) are deemed civil or criminal.

■ The statute describes the penalties as "civil penalties." *N.J.S.A.* 30:4D–17(e). However, we will not allow form to prevail over substance. Where the statutory scheme is "so punitive either in purpose or effect as to negate" the civil label, it is deemed criminal for purposes of the constitutional protec-

tions at issue.[7]  *United States v. Ward,* 448 *U.S.* 242, 249, 100 *S.Ct.* 2636, 2641, 65 *L.Ed.2d* 742 (1980).

■  *Ward* sets forth the inquiry to be followed in deciding whether a penalty is civil or criminal.  Primarily it is a matter of statutory construction.  *Id.* at 248, 100 *S.Ct.* at 2640.  Where the legislature has labelled the penalty civil, that expression of legislative purpose is accorded substantial weight.  *Id.* at 248–49, 100 *S.Ct.* at 2640–41.  Such a penalty will be deemed criminal only upon "the clearest proof" that the sanction is punitive either in purpose or effect.  *Id.*

.  Garay urges that although the penalties imposed upon him are denominated civil, they are actually punitive.  While there have been cases in which the Supreme Court rejected Congress' designation of a penalty as civil, none of them has involved merely monetary penalties.[8]  For example, *Kennedy v. Mendoza-Martin,* 372 *U.S.* 144, 83 *S.Ct.* 554, 9 *L.Ed.2d* 644 (1963), concerned forfeiture of citizenship for leaving or remaining outside the United States to evade military service.  Similarly, in *Trop v. Dulles,* 356 *U.S.* 86, 78 *S.Ct.* 590, 2 *L.Ed.2d* 596 (1958), the Court overturned on cruel and unusual punishment grounds a provision stripping a person of citizenship upon court martial conviction and dishonorable discharge for desertion in wartime.

---

[7]Some language in *Ingraham v. Wright* suggests that the "civil" label may be dispositive in the Eighth Amendment context even as to a clearly punitive sanction.  We need not decide here whether the cruel and unusual punishment provision in the New Jersey Constitution is similarly constricted.  *Cf. Ingraham v. Wright,* 430 *U.S.* at 683, 97 *S.Ct.* at 1419 (White, J., dissenting) (arguing that the eighth amendment applies to civil statutes or actions that are essentially punitive in nature); *see also Trop v. Dulles,* 356 *U.S.* 86, 78 *S.Ct.* 590, 2 *L.Ed.2d* 596 (1958).

[8]*Cf. United States v. United States Coin & Currency,* 401 *U.S.* 715, 91 *S.Ct.* 1041, 28 *L.Ed.2d* 434 (1971); *One 1958 Plymouth Sedan v. Pennsylvania,* 380 *U.S.* 693, 85 *S.Ct.* 1246, 14 *L.Ed.2d* 170 (1965) (certain penalties treated as "quasi-criminal" for purposes of the constitutional protections against self-incrimination and unreasonable search and seizure).  Since neither constitutional provision is at issue in this case, the quasi-criminal category is irrelevant.

The Court applied the Eighth Amendment even though the penalty was labelled civil. However, the qualitative difference between deprivation of citizenship and imposition of monetary sanctions is evident.

*Mendoza-Martin*, 372 *U.S.* at 168–69, 83 *S.Ct.* at 567–68, sets forth some of the factors that are helpful in determining whether a sanction is civil or criminal:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions. Absent conclusive evidence of congressional intent as to the penal nature of a statute, these factors must be considered in relation to the statute on its face. [Footnotes omitted]

Applying these factors to this case, we are not convinced that the Legislature's characterization of the provisions should be disregarded. While it is true that Medicaid fraud is also a crime and that the penalty provisions of *N.J.S.A.* 30:4D–17 apply only to one who has wilfully defrauded the government, application of the other factors suggests that these sanctions are civil. Monetary penalties such as these have been established in a variety of statutes. They have a clear non-punitive purpose and they have consistently been considered civil by the courts. *See Rex Trailer Co. v. United States*, 350 *U.S.* 148, 76 *S.Ct.* 219, 100 *L.Ed.* 149 (1956) (penalty of $2,000 for each violation of § 26(b) of the Surplus Property Act of 1944); *United States ex rel. Marcus v. Hess*, 317 *U.S.* 537, 63 *S.Ct.* 379, 87 *L.Ed.* 443 (1943) (penalty of $2,000 per violation plus double the amount of damages for false claims to the Public Works Administration); *Helvering v. Mitchell*, 303 *U.S.* 391, 58 *S.Ct.* 630, 82 *L.Ed.* 917 (1938) (penalty for income tax fraud of 50% of the amount of the fraud, in addition to repayment of that amount); *Toepleman v. United States*, 263 *F.*2d 697 (4th Cir. 1959), *cert.* den. *sub nom. Cato v. United States*, 359 *U.S.* 989, 79 *S.Ct.* 1119, 3 *L.Ed.*2d 978 (1959) (penalty of $2,000 per claim under the False Claims Act).

The obvious purpose of the penalty provisions here, and in the cases cited above, is to recover the costs of fraud investigations and of the legal proceedings required to ensure repayment. These penalties are in effect liquidated damages for the State's costs. In this case, those costs included the investigative staff necessary to uncover respondent's wrongdoing, preparation of these administrative proceedings and appeals that have reached this Court. More generally, the State may properly seek to recover from those who have defrauded it the costs of the overall investigative effort necessitated by the persistence of Medicaid fraud.

It is of little significance that the amount chosen by the Legislature does not derive from a precise computation of the costs to be recovered. "The inherent difficulty of choosing a proper specific sum which would give full restitution was a problem for [the Legislature]." *United States ex rel. Marcus v. Hess*, 317 *U.S.* at 552, 63 *S.Ct.* at 388. The Legislature is free to fix a reasonable sum as liquidated damages. *Rex Trailer Co. v. United States*, 350 *U.S.* at 153–54, 76 *S.Ct.* at 222. It makes no difference that the State has neither alleged nor proven any actual cost. The purpose of liquidated damages is to recover costs without the necessity of making such determinations. *Id.* at 151–54, 76 *S.Ct.* at 221–22.

In view of the many costs to the State entailed by Garay's conduct, and the substantial precedent supporting similar penalty provisions, we conclude that the penalty fixed by the statute is not on its face "so unreasonable or excessive that it transformed what was clearly intended as a civil remedy into a criminal penalty." *Rex Trailer*, 350 *U.S.* at 154, 76 *S.Ct.* at 222.

### III

While upholding *N.J.S.A.* 30:4D–17 as constitutional on its face, the Appellate Division held that application of the $2,000 penalty per claim was unconstitutional as applied to this case. Specifically, the court noted that it constituted a $116,000 penal-

ty for fraudulent claims totalling only $1,290.20. A penalty so disproportionate to the amount taken, especially when applied retroactively, was deemed "harsh and oppressive" and "fundamentally unfair." For these reasons, the Appellate Division held that the penalty violated the due process clause.

We agree that any penalty assessed under these provisions must be tested for reasonableness as applied to the specific facts involved. We further agree that respondent has a plausible claim of a due process violation on these facts, although we would place far less emphasis on the retroactivity of the penalties. However, we need not reach these issues, because we conclude that the Director had discretion to seek less than the maximum penalty provided under the statute. Since the Director concededly did not exercise his discretion in this case, but instead automatically imposed the maximum penalty, we remand to him to decide upon a reasonable sum.

In 1980, the Legislature amended the Act to grant the Director the authority to seek lesser sanctions when warranted, *L.* 1979, *c.* 365, § 5, *N.J.S.A.* 30:4D–7(*l*). This provision empowers the Commissioner or the Division:

> To compromise, waive or settle and execute a release of any claim arising under this act including interest or other penalties, or designate another to compromise, waive or settle and execute a release of any claim arising under this act. The commissioner or his designee whose title shall be specified by regulation may compromise, settle or waive any such claim in whole or in part, either in the interest of the Medicaid program or for any other reason which the commissioner by regulation shall establish.

This amendment was to take effect immediately upon final passage by the Legislature, which occurred on February 4, 1980. Aside from a few exceptions not relevant here, the amendment "appl[ied] to any and all claims, causes of action or proceedings arising prior to, on or after the effective date of this act." *L.* 1979, *c.* 365, § 19.

The Director's final decision in this case was issued on August 4, 1980. Thus, *N.J.S.A.* 30:4D–7(*l*) applies to this case. The Director had the authority to seek less than the full sanction authorized. The parties agree that he had such discretion.

Since the Director did not exercise his discretion, we remand this case to him to determine a reasonable penalty. *In re Plainfield-Union Water Co.*, 11 *N.J.* 382 (1953).

Automatic application of the maximum penalty when a person committed a large number of frauds involving small dollar amounts [9] could be unreasonable and therefore a violation of due process. The constitutional guarantee of due process requires that "the operation of a statute not be unreasonable, arbitrary or capricious, and that the means selected bear a rational relationship to a permissible legislative purpose." *Velmohos v. Maren Engineering Corp.*, 83 *N.J.* 282, 297 (1980), vacated and remanded on other grounds, —— *U.S.* ——, 102 *S.Ct.* 1605, 71 *L.Ed.*2d 844 (1982). *See Dome Realty Inc. v. City of Paterson*, 83 *N.J.* 212, 235 (1980); *Orange Taxpayers Council Inc. v. City of Orange*, 83 *N.J.* at 256. While these penalty provisions are fully reasonable on their face, they may be unreasonable as applied in cases like this. *See Usery v. Turner Elkhorn Mining Co.*, 428 *U.S.* 1, 96 *S.Ct.* 2882, 49 *L.Ed.*2d 752 (1976). The difference between the amount of money taken and the penalty sought (virtually $100 in penalties for each dollar taken) is so great that it may far exceed the state's interest in compensation and therefore be unreasonable.

We need not conclude that the penalty assessed here is unconstitutional. The potential constitutional infirmities in an automatic imposition of the $2,000 per claim penalty warrant a remand to the Director to determine reasonable sanctions.

There is no precise formula for determining the proper penalty. The Director should set a reasonable amount and state briefly why that amount was chosen. In determining a proper amount, the Director may consider both the amount taken and the various State costs associated with Medicaid fraud. *See supra* at 114. However, he should not impose a penalty which is excessively disproportionate to the amount taken. *See Peterson v. Weinberger*, 508 *F.*2d 45 (5th Cir. 1975), *cert.* den. 423 *U.S.*

---

[9]Respondent's average false claim was $22.25.

830, 96 *S.Ct.* 50, 46 *L.Ed.*2d 47 (1975) (Medicare fraud). In that case, the wrongdoer was liable for double damages plus $2,000 per claim for 120 claims worth a total of $16,153.44. The full amount assessable exceeded $270,000, but the district court, in its discretion, imposed the $2,000 penalty for only 50 of the 120 claims, limiting damages to approximately $130,000. The Fifth Circuit approved that exercise of discretion.

In addition, the Director may consider the nature of the fraudulent conduct and other factors he deems appropriate, with the following exception. We do not believe that the retroactivity of the increased penalties, as applied by the Appellate Division in this case and in *In re Kaplan,* 178 *N.J.Super.* 487 (1981), is an appropriate factor here. In *Usery v. Turner Elkhorn Mining Co.,* 428 *U.S.* at 16–18, 96 *S.Ct.* at 2892–2893, the Court suggested that retroactive application of legislation imposing liability might be unfair to one whose conduct "may have been taken in reliance upon the current state of the law, which imposed no liability on them . . . ." *Id.* at 17, 96 *S.Ct.* at 2893.[10] Here, by contrast, respondent's conduct was a crime even prior to the 1976 amendments. We reject the view that respondent could reasonably have decided to commit the crime of fraud merely because there were no additional civil penalties for doing so.

Consistent with the foregoing, the Director should use his discretion to determine how much of the authorized penalty to impose. His decision will not be reversed unless it constitutes an abuse of discretion.

### IV

Several secondary issues must also be addressed. First, the Appellate Division's holding that the Act "does not provide

---

[10]The Court in *Usery* upheld the retroactive aspects of the legislation as a reasonable means of allocating the costs of the injury, coal miners' pneumoconiosis, for which the retroactive compensation was ordered.

for *both* the recovery of the overpayment *and* treble damages" (emphasis in original) constitutes a misreading of the Act. *N.J.S.A.* 30:4D–17(e) provides for treble damages "in addition to any other penalties provided by law." At the same time, *N.J.S.A.* 30:4D–7(h), at the time of the Director's decision, authorized him to recover all illegal payments "*and* to assess and collect such penalties as are provided for herein." (emphasis added).[11] It is thus clear that *both* repayment and treble damages are contemplated.

Second, the Appellate Division appears to have inadvertently precluded the collection of interest accruing subsequent to June 15, 1977, the date of the demand letter from the Division. *N.J.S.A.* 30:4D–17(e) clearly provides for the payment of interest "from the date upon which payment was made to the date upon which repayment is made to the State." [12]

Finally, on January 20, 1982, subsequent to the Appellate Division decision, counsel for respondent informed the Court that respondent had filed a petition for bankruptcy in Texas. It is suggested that the institution of those proceedings might effect an automatic stay of this action. Federal law, 11 *U.S. C.A.* § 362(a)(1), provides that a petition in bankruptcy automatically stays:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

However, 11 *U.S.C.A.* § 362(b)(4) creates an exception to the stay for

---

[11]The wording of subsection (h) was changed by the 1979 amendment in ways not relevant to this issue.

[12]Prior to 1979, this provision was codified at 30:4D–17(c), but the wording was the same as it is now.

the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

In addition, 11 *U.S.C.A.* § 362(b)(5) excepts

the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

The issue here is whether these exceptions cover this case.

The legislative history of the Bankruptcy Act of 1978 explains these exceptions:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors. [House Report No. 95–595, 95th Cong., 2d Sess. at 343, reprinted in 1978 U.S.Code Cong. and Adm.News, 5787, 6299, cited in *N.L.R.B. v. Evans Plumbing Co.*, 639 *F.*2d 291, 293 (5th Cir. 1981)]

This is a suit to fix damages for violation of our law against fraudulent claims, and thus is encompassed by the exception in 11 *U.S.C.A.* § 362(b)(4). *See N.L.R.B. v. Evans Plumbing Co.*, 639 *F.*2d at 292–93 (stay does not apply to proceeding to enforce N.L.R.B. order reinstating employees with back pay); *In re Mansfield Tire and Rubber Co.*, 660 *F.*2d 1108, 1112–14 (6th Cir. 1981) (bankruptcy statute does not stay administration of state worker's compensation laws); *Marshall v. Tauscher (In re Tauscher)*, 7 *B.R.* 918 (Bkrtcy.E.D.Wis.1981) (assessment of civil monetary penalties for violations of the Fair Labor Standards Act not stayed). *But see State of Missouri v. U. S. Bankruptcy Court*, 647 *F.*2d 768 (8th Cir. 1981), *cert.* den. —— *U.S.* ——, 102 *S.Ct.* 1035, 71 *L.Ed.*2d 318 (1982) (Missouri statute authorizes State to liquidate business of warehouseman that becomes insolvent; stay applies since statute relates more to protection of pecuniary interest in debtor's property than to State regulation).

In sum, the State is not prevented from enforcing its regulations or fixing damages for their violation. Although 11 *U.S. C.A.* § 362(a)(2) would appear to stay any action to enforce any money judgment, that question is not presently before us.

## V

The Appellate Division judgment is reversed, and the case is remanded to the Division of Medical Assistance and Health Services to assess penalties consistent with the guidelines in this opinion.

*For reversal and remandment* —Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For affirmance* —None.