286 N.J. Super. 507 (1995)
669 A.2d 867
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAMES A. WILLIAMS, DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
Decided August 3, 1995.
*511 Albert Carilli, for defendant.
George Esposito, for the State (John Kaye, Monmouth County Prosecutor, attorney).
LOCASCIO, J.S.C.
On June 9, 1994, the Asbury Park Police Department, during the execution of a search warrant at defendant's residence, seized 33 small plastic zip-lock bags containing cocaine found on the couch, $166 found in a pair of co-defendant Hill's pants lying on the couch, and $748 found in the left pocket of the pants defendant was wearing at the time. Defendant contends that a few days before the search his girlfriend had lent him the $748 which he intended to use to rent an apartment. The State contends the $748 constitutes proceeds from defendant's illegal drug activities and therefore should be forfeited to help defray $1,754 in costs for the investigation of defendant's activities.
*512 On August 5, 1994, the Monmouth County Prosecutor's Office filed a verified complaint against defendant for forfeiture of the money found during the search. On September 30, 1994, defendant failed to appear for a show cause hearing, and on October 4, 1994, a default judgment of forfeiture of the $748 was entered against him.
On September 15, 1994, a Monmouth County Grand Jury handed up Indictment No. 94-11-1849, charging defendant with possession of a controlled dangerous substance, contrary to N.J.S.A. 2C:35-10a(1) and possession of a controlled dangerous substance with intent to distribute, contrary to N.J.S.A. 2C:35-5b(3). Defendant, in this motion to dismiss the indictment, contends that this criminal action, in addition to the civil forfeiture, violates the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.
Both the United States and New Jersey constitutions provide that "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb ..." U.S. Const., amend. V; N.J. Const., art. I, ¶ 11; See Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969) (holding the Double Jeopardy Clause applicable to the states through the Fourteenth Amendment); State v. Farmer, 48 N.J. 145, 168, 224 A.2d 481, cert. denied 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967). The Double Jeopardy Clause protects against a second prosecution for the same offense, after a conviction or an acquittal, and prohibits multiple punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 716, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); State v. Darby, 246 N.J. Super. 432, 438, 587 A.2d 1309 (App.Div. 1991). Although its text refers only to "life or limb", it is well settled that the Amendment covers imprisonment and monetary penalties. United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). However, the Amendment's protection operates only against a proceeding that is criminal; it does not prohibit civil sanctions and criminal *513 penalties for the same act or course of conduct. State v. Darby, supra, 246 N.J. Super. at 438, 587 A.2d 1309.
The question presented by the within motion is whether the forfeiture of the $748 found on defendant, during the search of his apartment, constitutes a second punishment in violation of the Double Jeopardy Clause.
The New Jersey Code of Criminal Justice authorizes forfeiture to the State of two types of contraband: (1) prima facie contraband, which includes controlled dangerous substances, firearms, illegally possessed gambling devises, untaxed cigarettes, and untaxed special fuel, N.J.S.A. 2C:64-1.a.(1); and (2) derivative or non-prima facie contraband, which is "innocent" in nature, but has been used or intended to be used in furtherance of an unlawful activity, or constitutes proceeds of illegal activities. N.J.S.A. 2C:64-1.a.(2)-(4). The State contends that the $748 seized from defendant is derivative contraband.
Although prima facie contraband is automatically forfeited upon seizure, where derivative contraband is sought, the State must initiate a civil action within ninety days of the seizure. N.J.S.A. 2C:64-3a. In that action, the State must prove, by a preponderance of the evidence, that the seized property was connected to an indictable offense. The fact that a prosecution terminates without conviction does not preclude forfeiture proceedings against the property. State v. Seven Thousand Dollars, 136 N.J. 223, 233, 642 A.2d 967 (1994); State v. One 1988 Honda Prelude, 252 N.J. Super. 312, 315, 599 A.2d 932 (App.Div. 1991) (noting that forfeiture is permitted even when the State dismisses all criminal charges).
Congress may, consistent with the Double Jeopardy Clause of the Fifth Amendment, impose both a criminal and a civil sanction with respect to the same act or omission, since double jeopardy prohibits "merely punishing twice, or attempting a second time to punish criminally, for the same offense." Helvering v. Mitchell, 303 U.S. 391, 398-99, 58 S.Ct. 630, 633, 82 L.Ed. *514 917 (1937) (emphasis added); State v. Labato, 7 N.J. 137, 146-47, 80 A.2d 617 (1951). Forfeiture is not barred by the Double Jeopardy Clause if it involves neither two criminal trials nor two criminal punishments. One Lot Emerald Cut Stones and One Ring v. United States, 409 U.S. 232, 234, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (One Lot); State v. Rodriquez, 130 N.J. Super. 57, 60, 324 A.2d 911 (App.Div.), certif. denied 66 N.J. 325, 331 A.2d 24 (1974). However, where a civil sanction is intended as "punishment," it may constitute a second criminal proceeding which bars a subsequent prosecution. Helvering v. Mitchell, supra, 303 U.S. at 399, 58 S.Ct. at 633; State v. Labato, supra, 7 N.J. at 147, 80 A.2d 617.
In United States v. Halper, supra, 490 U.S. at 436, 109 S.Ct. at 1895, 104 L.Ed.2d 487, the Court considered whether and under what circumstances a civil penalty may constitute "punishment" for purposes of double jeopardy. Halper was convicted of sixty-five separate violations of the criminal false claims statute (18 U.S.C.A. § 287), each involving a demand for $12 reimbursement for medical services worth only $3. After Halper was sentenced to two years in prison and fined $5,000, the Government filed a separate action to recover a $2,000 civil penalty for each of the 65 violations. The Court, finding that the civil penalties constituted "punishment," held that a "defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second action may not fairly be characterized as remedial, but only as a deterrent or retribution." United States v. Halper, supra, 490 U.S. at 448-49, 109 S.Ct. at 1901-02, 104 L.Ed.2d 487. The Court stated, however, that a civil sanction constitutes criminal punishment only in the rare case in which the amount of the sanction is "overwhelmingly disproportionate" to the damages caused by the wrongful conduct and thus "bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as `punishment' within the plain meaning of the word." United States v. Halper, supra, 490 U.S. at 449, 109 S.Ct. at 1902.
*515 Similarly, in State v. Darby, supra, 246 N.J. Super. at 435, 587 A.2d 1309, defendants were indicted for conspiracy to commit theft and theft of over three million dollars by failing to make required dispositions. Because the Chancery Division, for the same conduct alleged in the indictment, had permanently enjoined defendants from any securities-related activities in New Jersey and assessed $163,400 in civil penalties, through the Uniform Securities Law, defendants moved to dismiss the indictment on double jeopardy grounds. The court, in denying the motion, adopted the Halper analysis and held that the Chancery Division's penalties did not amount to "punishment." State v. Darby, supra, 246 N.J. Super. at 444, 587 A.2d 1309.
Thus, under Halper and Darby, pursuant to N.J.S.A. 2C:64-1, civil forfeiture of proceeds of illegal drug sales constitutes "punishment" if the amount of the proceeds forfeited is so great that it bears no rational relationship to the costs incurred by the government and society resulting from defendant's criminal conduct. In determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated. United States v. Halper, supra, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901, n. 7, 104 L.Ed.2d 487; State v. Darby, supra, 246 N.J. Super. at 444, 587 A.2d 1309.
Similar reasons were considered by the Court in One Lot, supra, where a forfeiture action was instituted after defendant was acquitted of smuggling charges. The Court upheld the forfeiture as a civil remedy since it was a "reasonable form of liquidated damages for violation of the inspection provisions and serve[d] to reimburse the Government for investigation and enforcement expenses." 409 U.S. at 237; 93 S.Ct. at 493.
Expanding upon the reasoning in One Lot, the Court in Halper stated that the government is entitled to "rough remedial justice," that is, it may demand compensation according to somewhat "imprecise formulas," "without being deemed to have imposed *516 a second punishment for purposes of double jeopardy analysis," and it is of little significance that the State cannot derive a precise calculation of the costs to be received since the Legislature is free to fix a reasonable sum as liquidated damages. United States v. Halper, supra, 490 U.S. at 446, 109 S.Ct. at 1900, 104 L.Ed.2d 487; see also In Re Garay, supra, 89 N.J. 104, 114, 444 A.2d 1107 (1982). The government may also recover amounts that represent costs other than actual damages from the prohibited activity, including ancillary costs such as the costs of detection and investigation, Merin v. Maglaki, 126 N.J. 430, 442-43, 599 A.2d 1256 (1992), which are considered legitimate expenses under a Halper and Darby analysis. See United States v. Halper, supra, 490 U.S. at 446 n. 6, 109 S.Ct. at 1900 n. 6, 104 L.Ed.2d 487; see also State v. Darby, supra, 246 N.J. Super. at 446, 587 A.2d 1309.
Defendant herein contends that Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) stands for the proposition that all forfeitures constitute "punishment" and are therefore violative of Fifth Amendment. In Austin, when an undercover officer went into defendant's auto body shop to purchase cocaine, defendant went into his nearby mobile home to get the cocaine, re-entered the auto body shop, and sold it to the officer. Subsequent to Austin's arrest and conviction, the federal government commenced forfeiture proceedings against the mobile home and auto body shop, relying upon 21 U.S.C.A. § 881(a)(4),  conveyances, or means of transporting drugs such as automobiles, and (a)(7),  real estate used in drug transactions.
Austin set forth three criteria to be considered in determining whether a forfeiture constitutes punishment. First, because of "the historical understanding of forfeiture as punishment," there is a strong presumption that any forfeiture statute does not serve a solely remedial purpose. Austin v. United States, supra, 509 U.S. at ___, 113 S.Ct. at 2812. Second, where such a statute focuses on the culpability of the property owner by exempting innocent owners or lienholders, it is likely that the enactment serves at least in part to deter and punish guilty *517 conduct. Id., 509 U.S. at ___, 113 S.Ct. at 2810. Finally, where the legislative body has tied forfeiture directly to the commission of specified offenses, it is reasonable to presume that the forfeiture is at least partially intended as an additional deterrent to, or punishment for, those violations of law. Id. at ___, 113 S.Ct. at 2811. These three criteria will be analyzed, seriatim, to determine whether the forfeiture in the within matter constitutes punishment.
Applying the first criterion in Austin to the within matter, it is necessary to determine whether the State has overcome the presumption that the forfeiture does not serve a solely remedial purpose. A civil sanction will constitute punishment under Halper and Austin if it "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." United State v. Halper, supra, 490 U.S. at 448, 109 S.Ct. at 1902; Austin v. United States, 509 U.S. at ___, 113 S.Ct. at 2806. Although the forfeiture of illegal proceeds conceivably could be used as a means of deterrence or retribution, the fact that the money is used to help defray expenses incurred during the course of the investigation resulting in the seizure, is a strong indication that the nature of the remedy is civil or compensatory, rather than punitive. See One Lot, supra, 409 U.S. at 237, 93 S.Ct. at 489. Therefore, the forfeiture of the $748 in the within matter, which was used to compensate the State for the costs of its investigative efforts, serves a remedial goal and does not constitute punishment.
As to the second criterion of Austin, which is limited to those cases where ownership of property is an issue, the Court acknowledged that the forfeiture of goods involved in customs violations is a "reasonable form of liquidated damages," Id., 509 U.S. at ___, 113 S.Ct. at 2811 (quoting One Lot, supra, 409 U.S. at 237, 93 S.Ct. at 489), but the dramatic variations in the value of conveyances and real property does not permit a similar argument for forfeitures of automobiles, homes or businesses. In Austin, defendant's body shop and mobile home were forfeited whereas in *518 One Lot the smuggled cargo was forfeited. These two cases illustrate the distinction between direct proceeds of illegal activity, property used to facilitate illegal conduct, and property acquired through the use of illegal proceeds. If the property which is the subject of a statutory forfeiture proceeding constitutes proceeds of illegal activity, the State has an interest in the proceeds superior to that of the alleged criminal who received the proceeds in the course of the illegal activity. See One (1) 1979 Chevrolet Camaro Z-28, 202 N.J. Super. 222, 226-27, 494 A.2d 816 (App.Div. 1985).
It is proper to consider ownership of property and innocent owner defenses when there is an existing legal right to the property vested in defendant. In the present case, where alleged illegal proceeds are the subject matter of the forfeiture, it is more akin to the seizure of proceeds from the robbery of a bank than the seizure of lawfully derived real or personal property. See Caplin and Drysdale, Chartered v. United States, 491 U.S. 617, 626, 109 S.Ct. 2646, 2652-53, 105 L.Ed.2d 528 (1989) (holding that a defendant, who was indicted for drug importation and had his assets "frozen" but attempted to pay his attorney through those assets, had no Sixth Amendment right to spend another person's money for services rendered by his attorney). In such cases, defendant does not have a constitutionally protected property interest in the proceeds. See One (1) 1979 Chevrolet Camaro Z-28, supra, 202 N.J. Super. at 226-27, 494 A.2d 816; see also United States v. 92 Buena Vista Avenue, Rumson, N.J., 507 U.S. 111, 141, 113 S.Ct. 1126, 1143, 122 L.Ed.2d 469, 492-493 (1993) (Kennedy, J., dissenting). Therefore, under the second Austin criterion, the focus on culpability is not determinative as to whether the forfeiture is remedial or punitive.
In the third Austin criterion, the Court considered whether the forfeiture was tied to the commission of a crime and served, in part, as an additional deterrent or punishment for the violation of law. Although forfeiture is not triggered until a violation of law has occurred, the legislative history to New Jersey's forfeiture *519 statute indicates that the bill was intended to permit a local law enforcement agency, which has participated in a criminal investigation, to apply to the Superior Court for use of any property seized as a result of that investigation to defray law enforcement costs. Senate Judiciary Committee Statement, Senate, No. 2204, L. 1989, c. 279. Clearly, the policy behind the statute is to use the proceeds of illegal drug sales to reimburse the State for investigative expenses. Such a sanction, in using the fruits of defendant's crime, is "rationally related" to the damages suffered by the State.
Since the State may properly seek to reimburse society for the damage done by individuals who engage in illegal drug related activities by confiscating the fruits of the crime, i.e., the illegal profit, applying the factors set forth in Austin, Halper and Darby to the within matter, this court must determine whether the forfeiture is intended to recapture the costs of the police investigation, i.e., whether it is "rationally related" to the damage suffered. The State contends that the forfeiture of the $748 seized seeks to deprive defendant of illegal proceeds of a crime and reimburse the State for the following law enforcement costs: salaries of the police officers involved in the operation at issue, ($1,620), and vehicular costs ($134), which included travel miles to the site of the buys, execution of the warrant, and delivery of evidence. Halper, supra, bars only the imposition of a criminal penalty and a separate civil action based upon the same conduct that is not "rationally related to the goal of making the Government whole." 490 U.S. at 451; 109 S.Ct. at 1901.
This court finds, by a preponderance of the evidence, that the forfeiture herein is not on its face "so unreasonable or excessive that it transformed what was clearly intended as a civil remedy into a criminal penalty," Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956), and is "rationally related" to making the government whole. The forfeiture, in the within matter, does not constitute a second "punishment" because it involves the forfeiture of property derived from unlawful activity.[1] *520 Defendant is not losing anything to which the law has entitled him; instead, he is left in the "lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme." United States v. Tilley, 18 F.3d 295, 300 (5th Cir.1994). Therefore, since "[t]he forfeiture of proceeds of illegal drug sales serves the wholly remedial purposes of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and of reimbursing society for the costs of combatting the allure of illegal drugs," United States v. Tilley, supra, 18 F.3d at 299, this forfeiture action can hardly be considered punishment within the "plain meaning of the word." United States v. Halper, supra, 490 U.S. at 449, 109 S.Ct. at 1902.
In sum, since the forfeiture at issue does not constitute "punishment" under Austin and Halper, but rather, serves a remedial purpose, it does not violate the Double Jeopardy Clauses of the United States and New Jersey Constitutions. However, defendant further contends, relying again on Austin, that the Excessive Fines Clause of the Eighth Amendment warrants a dismissal of the criminal charges against him.
The Court, in Austin, stated that even if the forfeiture proceeding was a civil matter, if the forfeiture is classified as punishment, the Eighth Amendment's Excessive Fines Clause applies. Austin v. United States, supra, 509 U.S. at ___, 113 S.Ct. at 2806. The Court concluded that forfeiture under the above provision constitutes "payment to a sovereign as punishment for some offense" and therefore is subject to the limitations of the Eighth Amendment's Excessive Fines Clause. Id. at ___, 113 S.Ct. at 2812. Although the Court in Austin did not establish a test to determine when a forfeiture is constitutionally excessive, Justice Scalia's concurring opinion suggested that, because in rem forfeitures tend to go beyond the limits of the Eighth Amendment *521 when the property at issue is not an instrumentality of the offense, in rem forfeitures should be analyzed differently than monetary fines or in personam forfeitures. Austin v. United States, supra, 509 U.S. at ___-___, 113 S.Ct. at 2814-15 (Scalia, J. concurring); See State v. Seven Thousand Dollars, supra, 136 N.J. at 235, 642 A.2d 967 (adopting the inquiry set forth by Justice Scalia in Austin). The focus in an in rem forfeiture is not on the value of the property, but rather on whether the property has been "tainted" by the unlawful use. Austin v. United States, supra, 509 U.S. at ___; 113 S.Ct. at 2815 (Scalia, J. concurring). Monetary or in personam forfeitures, however, are based upon the extent of the fine in relation to the offense and are analyzed to determine whether those penalties are excessive. Id. at ___-___, 113 S.Ct. at 2814-15. Since the forfeiture in the within matter is not a fine or penalty, the analysis to be utilized is that of an in rem forfeiture.
An in rem forfeiture, examined through the Excessive Fines Clause, is not excessive if the money or property forfeited is the fruit of an illegal exchange. Under Justice Scalia's analysis, the relevant factor to determine whether a forfeiture is excessive is the relationship between the property and the offense. Austin v. United States, supra, 509 U.S. at ___, ___, 113 S.Ct. at 2814-15 (Scalia, J. concurring). The question is not how much the confiscated property is worth, but whether the confiscated property was in such close proximity to the illegal activity as to render the property itself "guilty" and hence forfeitable. If the property itself is "guilty," the forfeiture will not be found to be excessive. Ibid.
Money, found in close proximity to a controlled dangerous substance, is reasonably presumed to be the proceeds of the sale of contraband. One (1) 1979 Chevrolet Camaro Z-28, supra, 202 N.J. Super. at 226-27, 494 A.2d 816. In the within matter, the $748 found in the pocket of the pants defendant was wearing during the search was in close proximity to the 33 zip-lock bags of cocaine found on the couch, and therefore, it can be reasonably *522 presumed to be proceeds of illegal activity.[2] The forfeiture, therefore, is not excessive because the money is deemed "guilty" within the meaning of the Eighth Amendment.
For the foregoing reasons defendant's motion to dismiss the indictment is hereby denied.
NOTES
[1] The affidavit of Shawn Brown, defendant's girlfriend, alleging that "a few days prior to [defendant's] arrest" she lent him "approximately $850.00" to be used to find an apartment, is, to say the least, unconvincing.
[2] The affidavit of Shawn Brown, defendant's girlfriend, is vague and insufficient to overcome this presumption.