246 N.J. Super. 432 (1991)
587 A.2d 1309
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROBERT J. DARBY, KATHLEEN C. DARBY, AND KIM HANDY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 1991.
Decided March 13, 1991.
*434 Before Judges KING, R.S. COHEN and STERN.
Larry R. Etzweiler, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General, attorney, Larry R. Etzweiler of counsel and on the brief).
Katherine F. Graham, Designated Counsel, argued the cause for respondent Robert J. Darby (Wilfredo Caraballo, Public Defender, attorney, Katherine F. Graham of counsel and on the brief).
William E. Norris, Designated Counsel, argued the cause for respondent Kathleen C. Darby (Wilfredo Caraballo, Public *435 Defender, attorney, William E. Norris of counsel and on the brief).
Abby P. Schwartz, Assistant Deputy Public Defender, argued the cause for respondent Kim Handy (Wilfredo Caraballo, Public Defender, attorney, Abby P. Schwartz of counsel and on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Defendants were indicted by the State Grand Jury for conspiracy to commit theft (N.J.S.A. 2C:5-2; 2C:20-4; 2C:20-9), and theft of over $3 million by failing to make required disposition (N.J.S.A. 2C:20-9).[1] They moved to dismiss the indictment on double jeopardy grounds, citing the punitive effects of the Chancery Division judgment rendered against them for securities fraud for the same conduct alleged against them in the indictment. The Law Division granted defendants' motion and dismissed the indictment. The State appealed; we reverse.
Defendants Robert J. Darby and Kathleen C. Darby are husband and wife. Defendant Kim Handy is their daughter. Robert J. Darby was once a registered stockbroker and securities dealer. In 1975, the Darbys formed Premium Resources, Inc., to conduct the business of financing payment of insurance premiums for businesses and persons. They attempted to raise capital through a public stock offering, but were unsuccessful. As an alternative, they began in 1977 to sell interest-bearing "thrift certificates." From 1977 to 1986, there were over 200 buyers, mostly unsophisticated people. The State charged, in both civil and criminal proceedings, that the "thrift certificates" were nonexempt securities under the Uniform Securities Law (1967), N.J.S.A. 49:3-47 et seq., and thus should have been registered; that the proceeds of the sales of the certificates *436 were improperly commingled with other corporate funds and misused, and that the sales of the certificates were based upon material misrepresentations as to their nature and value.
Premium Resources, Inc. was an unsuccessful business, and ultimately collapsed. The "thrift certificates" became worthless. In May 1986, the Attorney General filed a complaint in the Chancery Division on behalf of the Chief, Bureau of Securities, naming the corporation, the Darbys, Handy and others as defendants. The complaint charged defendants with violations of the Uniform Securities Law (1967) ("the Law") and sought a declaratory judgment that defendants had violated the Law, a preliminary and permanent injunction against unlawful practices and any sale of securities by defendants, appointment of a receiver, monetary penalties, and "such other relief as the Court deems equitable and just."
The indictment was rendered in December 1986. As already mentioned, it targeted the same activities charged in the civil complaint, except that it covered a somewhat shorter time.
Defendants then moved to stay the proceedings in the Chancery Division until disposition of the indictment. The thesis of the motion was that the defendants' rights to avoid self-incrimination would be violated by requiring them to participate in the Chancery litigation. The motion was denied, and both this court and the New Jersey Supreme Court denied interlocutory relief. See State v. Kobrin Securities, Inc., 111 N.J. 307, 544 A.2d 833 (1988).
The Chancery suit was then pretried. The pretrial order recited the State's damage claims, as required by R. 4:25-1(b)(5).[2] First was the claim for "civil penalties," pursuant to N.J.S.A. 49:3-70(b), in the amount of $200 times the number of investors. Second was "[d]isgorgement of all monies acquired, including profits, in connection with the unlawful for sale [sic] *437 and sale of Premium's securities in an aggregate amount of at least $3.4 million." Third was a permanent injunction against "any securities related activities." Attached to the pretrial order was a portion of the Attorney General's pretrial memorandum, which stated his damage claims in essentially the same words.
We have very little of the record of the Chancery suit. It appears, however, that there was an interlocutory order pursuant to which defendants' assets worth some $.5 million were seized, a custodian was appointed to hold the seized assets, and preliminary injunctions were entered against securities-related actions by defendants. The final judgment was entered on July 6, 1988, after a 20-day trial. It declared that defendants had violated the Uniform Securities Law (1967), permanently enjoined them from any securities-related activities in New Jersey, entered judgment against defendant Handy for $12,500, entered judgment against defendant Handy for civil penalties of $128,600 ($200 X 643), entered judgment against the Darbys together for civil penalties of $163,400 ($200 X 817), entered judgment against Handy and the Darbys "individually, jointly and severally" for $3.1 million "representing the restoration of money unlawfully acquired from investors in Premium Resources, Inc....," and ordered the previously appointed custodian to retain the assets he held "for the benefit of the investors...." No appeal was taken from this judgment.[3]
Defendants Darby and Handy then moved to dismiss the indictment on the thesis that they had been punished by the *438 judgment entered against them in the Chancery action, and that prosecution of the indictment put them again in jeopardy for the same offenses. The Law Division judge granted defendants' motions. He reasoned that the effect and purpose of the Chancery Division judgment was punitive; that the "fine was so large that it can only be considered punishment"; and that the injunctions against securities activities, the retention of defendants' assets and the $3.1 million disgorgement order were grounded in deterrence and retribution, the two purposes of punishment. The judge concluded that the Chancery judgment exhausted the State's ability to constitutionally punish defendants, and thus he dismissed the indictment.
No person may be "subject for the same offense to be twice put in jeopardy of life or limb, ..." by the federal government, U.S. Const., amend. V, or any state, Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). New Jersey's constitution expresses a coextensive guarantee, in different words. N.J. Const. of 1947, art. 1, para. 11. State v. Farmer, 48 N.J. 145, 168, 224 A.2d 481, cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967).
The double jeopardy guarantees protect against a second prosecution for the same offense after acquittal or after conviction, and against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969). They protect against a second proceeding only if its essence is criminal. They do not prohibit the imposition of civil sanctions and criminal penalties for the same act or course of conduct. Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938); In re Garay, 89 N.J. 104, 111, 444 A.2d 1107 (1982). Thus, the dispositive question is whether the sanctions imposed on defendants in the Chancery proceedings should be considered criminal or civil.
The penalties were imposed in proceedings brought by the Attorney General under the Uniform Securities Law (1967), *439 N.J.S.A. 49:3-47 et seq. The Law was modeled after a statute approved by the National Conference of Commissioners on Uniform State Laws in 1956, which has been adopted in thirty-six states. See 7B U.L.A. 509 (1988).[4] Our Law departs from the Uniform Securities Act in a number of respects. Data Access Sys., Inc. v. State, 63 N.J. 158, 162, 305 A.2d 427 (1973).
Like the uniform act, our Law provides for criminal penalties for wilful violations. N.J.S.A. 49:3-70(a); 7B U.L.A. 631-632 (§ 409(a)). It also provides for suspension or revocation of the registration of a broker-dealer, agent or investment advisor for wilful violations. N.J.S.A. 49:3-58(a)(ii); 7B U.L.A. 542 (§ 204(a)(B)). It permits the Superior Court to issue orders at the instance of the Chief, Bureau of Securities, to enjoin illegal activities, to enjoin all securities-related activities by violators, and to appoint a receiver of illegal gains of a violator and a receiver of all of the assets of a business firm which is a violator. N.J.S.A. 49:3-69; 7B U.L.A. 628 (§ 408).
New Jersey's Law provides yet another sanction, not contained in the uniform act, of monetary penalties for wilful or non-wilful violations of the Law or any rule or order of the Bureau of Securities, to be sued for by the Chief, Bureau of Securities, in summary proceedings under the penalty enforcement law. N.J.S.A. 49:3-70(b); 2A:58-1 et seq. The § 70(b) monetary penalties are apparently unique additions to the uniform act, made only by New Jersey. See Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 90, 312 A.2d 497 (1973).
In ruling on the extent of the procedural guarantees to which defendants were entitled, the Chancery Division Judge characterized the § 70(b) monetary penalties as civil. The State argues that defendants' failure to appeal from the Chancery *440 Division judgment collaterally estops them from contesting that characterization in the present proceedings.
We disagree. The issue is purely one of law, and the Chancery Division ruling was not made in the context of the constitutional guarantees against double jeopardy. The issue is one of public importance, and, finally, we decline to estop defendants because they decided to devote their litigation resources to a plausible attack on the indictment instead of a long-shot appeal from the Chancery Division judgment. Cf. City of Plainfield v. Public Serv. Elec. & Gas Co., 82 N.J. 245, 257-259, 412 A.2d 759 (1980).[5]
Whether a penalty should be generally characterized as civil or criminal is primarily a matter of statutory construction. United States v. Ward, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749, reh'g denied, 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980); Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 132, 527 A.2d 1368 (1987). The legislative labeling of a penalty as civil is accorded substantial weight. Id.[6]
The Legislature did not expressly label the § 70(b) penalties at all. The section of the enacted Senate bill (S. 327) that became L. 1967, c. 93, § 23 had no heading.[7] Section 23, as printed in the Public Laws of New Jersey, is headed "Violations; penalty." The label "criminal penalties" which now appears at the head of § 70 in the Annotated Statutes is not the *441 product of legislative action, is not part of the statute, and is therefore not an appropriate clue to legislative intent. See N.J.S.A. 1:1-6; 1:3-1; State v. Blinsinger, 114 N.J. Super. 318, 276 A.2d 182 (App.Div. 1971); State v. Brown, 188 N.J. Super. 656, 661, 458 A.2d 165 (Law Div. 1983), certif. denied, 101 N.J. 280, 501 A.2d 944 (1985).
Comparing the language of § 70(b) with § 70(a), however, makes the legislative intent clear. Section 70(a) applies to wilful violators, relates to conduct described as "crime," speaks of "guilt" and "imprisonment," refers to proceedings initiated by indictment or information, and contains a five-year statute of limitations, the same as N.J.S.A. 2C:1-6b(1). Section 70(b), on the other hand, applies to non-wilful violators, describes prohibited conduct as violations instead of crimes, makes the violator "liable" for only a monetary "penalty,"[8] and refers to collection proceedings under N.J.S.A. 2A:58-1 et seq., which, R. 4:70 makes clear, are civil in nature. See Department of Conservation & Eco. Dev. v. Scipio, 88 N.J. Super. 315, 319-320, 212 A.2d 184 (App.Div.), certif. denied, 45 N.J. 598, 214 A.2d 32 (1965).
In Kimmelman v. Henkels & McCoy, Inc., supra, our Supreme Court decided that the per-diem monetary penalties imposed by the state Antitrust Act, N.J.S.A. 56:9-10c, were civil, and thus did not invoke all of the constitutional protections available to defendants in criminal prosecutions. In so ruling, the Court adopted a seven-part test used by the U.S. Supreme Court in holding legislation invalid which imposed forfeiture of citizenship for leaving or remaining outside the country to evade military service, without affording the procedural safeguards of the Fifth and Sixth Amendments:
[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment  retribution and deterrence, [5] whether the *442 behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned. [Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644, 661 (1963).
The test is applied to the face of the statute, and not to its application in the particular case. Kimmelman, supra, 108 N.J. at 132, 527 A.2d 1368.
Applying the test to § 70(b) yields a mixed result, weighted toward a conclusion that the penalties are civil. (1) There is no affirmative disability connected with § 70(b). The dealer deregistration remedy of § 58 is remedial and, like attorney disbarment, is not a punishment. Ex parte Wall, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552 (1883); In re Addonizio, 95 N.J. 121, 123-124, 469 A.2d 492 (1984).[9] (2) Monetary penalties have historically been regarded both as punishment and as serving remedial goals, depending on the circumstances. (3) Section 70(b) penalties are imposed without a finding of scienter. (4) Section 70(b) penalties, at the time, were limited to $200 for the first violation and $500 for subsequent violations. Although the two-level penalty maximum suggests an element of punishment, the low level of the maximum in comparison with the dollar extent of the generality of securities violations suggests the penalties might be inadequate as punishment.[10] (5) Wilful securities violations are punishable as crimes not only under § 70(a), but also under the theft provisions of the Criminal Code. N.J.S.A. 2C:20-1 et seq. Nonwilful violations present a considerably different level of culpability and public danger, *443 and thus invite a remedial rather than punitive response. (6) The rationally connected alternate purpose of § 70(b) penalties is to help defray the cost of government investigation and enforcement. In re Garay, supra, 89 N.J. at 114, 444 A.2d 1107. (7) The $200-per-violation penalties, and even the $500-per-subsequent-violation penalties, are not excessive as a rough measure of government's costs.
We have concluded that § 70(b) penalties are not on their face criminal. But that does not end the double jeopardy inquiry, for a civil penalty actually assessed must be tested for punitive purpose and effect as applied to the particular facts involved.[11] The U.S. Supreme Court recently confronted the problem of civil penalties and double jeopardy in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Halper was convicted of filing 65 Medicare claims which were false to the extent of $9 each and resulted in an overcharge to the federal government of $585. He was sentenced to two years' imprisonment and fined $5,000. The government then brought an action under the False Claims Act, 31 U.S.C. §§ 3729-3731, for the same conduct. Defendant was exposed to a civil penalty of $2,000 plus double damages plus costs for each violation, for a total of more than $130,000. The District Court entered judgment for $16,000, which it believed sufficient to compensate the Government for its loss and expenses in investigating and prosecuting Halper's false claims, to which, the Court believed, the $130,000 exposure bore no rational relation. The Government took a direct appeal to the Supreme Court.
*444 The Supreme Court reviewed its earlier opinions and summed them up:
The relevant teaching of these cases is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis. These cases do not tell us, because the problem was not presented in them, what the Constitution commands when one of those imprecise formulas authorizes a supposedly remedial sanction that does not remotely approximate the Government's damages and actual costs, and rough justice becomes clear injustice. [Halper, supra, 490 U.S. at 446, 109 S.Ct. at 1900-1901, 104 L.Ed.2d at 500.]
To determine whether a civil penalty constitutes punishment for the purpose of double jeopardy analysis, the Court said that it had to assess the character of the sanctions actually imposed and not the label they carried. Thus, the determination whether a civil sanction constitutes punishment for double jeopardy analysis "requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." Id. at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501.
Retribution and deterrence are the twin goals of punishment, and are not legitimate non-punitive governmental objectives. Id. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502; Bell v. Wolfish, 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447, 468 n. 20 (1979). Thus, Halper held that a civil sanction that is not remedial, but rather serves only retributive or deterrent purposes, is punishment; as a result, a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the latter may not fairly be characterized as remedial, but only as a deterrent or retribution. Thus, if a previously punished defendant is subjected to a civil penalty that bears no relation to the goal of compensating the government, but rather appears to qualify as additional punishment, the government must prove its damages and costs, so that the court can exercise its *445 judgment to fix a civil sanction that will not cross the line between remedy and punishment. Halper, supra, 490 U.S. at 449-450, 109 S.Ct. at 1902-1903, 104 L.Ed.2d at 502-503. The Supreme Court remanded the matter to the District Court to permit the Government to prove its actual losses and expenses arising from Halper's fraud.
Unlike the present case, the Halper criminal conviction and sentence came first; the civil penalty proceedings followed. Thus, the double jeopardy consequences of the imposition of punitive "civil" penalties could be avoided by assuring that the penalties were not disproportionate to the Government's losses and expenses.
Here the civil penalty proceedings are complete. If punitive penalties were imposed, according to the Halper standard, they serve to bar the State from seeking further punishment by way of criminal proceedings for the same conduct. We need not decide whether the double jeopardy bar to criminal proceedings can be removed by returning, before the criminal trial, to the Chancery Division to reduce to a legitimate level the monetary penalties already imposed there. The State has made no effort to take that course.
The Chancery Division judgment against defendants arose out of an omnibus proceeding, and thus had a number of aspects. It barred them from further securities-related activity, a clearly remedial measure. It assessed penalties of $163,400 against the Darbys together and of $128,600 against Handy, for a total of $292,000. The judgment was pre-Halper, and the State did not make a showing in the Chancery Division of its enforcement costs in order to justify the level of civil penalties assessed. The State did submit such proofs later in opposing the subsequent motion to dismiss the indictment. It showed expenses of $205,000, almost three-quarters of which was the cost of the estimated time spent on the matter by two deputy attorneys general. The remaining quarter was the cost of the estimated time spent by Bureau of Securities people. *446 Those are legitimate expenses to be considered in a Halper analysis. See Halper, supra, 435 U.S. at 446 n. 6, 109 S.Ct. at 1900 n. 6, 104 L.Ed.2d at 500 n. 6 ("the Government's investigative and prosecutorial costs"). Not included in the $205,000 were physical plant costs, supplies, travel, office expenses and trial costs. We cannot estimate these costs, but we are satisfied that the total of $292,000 in civil penalties was not disproportionate to the State's costs, which were higher than the direct personnel costs contained in the State's $205,000 estimate. Surely, the State gained no more than "rough remedial justice." It is of no consequence that the Chancery Division did not have the State's expense analysis before it. It is the objective relationship between the amount of the penalty and the Government's losses and expenses that controls.
Defendants argue that the $3.1 million in "disgorgement" liability imposed by the judgment must also be considered punitive. Their thesis is that the disgorgement order was unauthorized by the Law and that its effect must be viewed as a significant part of the punitive effect of the total judgment.
Defendants are correct that the Uniform Securities Law does not specifically authorize the disgorgement order. It is not included in § 69(c), which authorizes suit by a receiver, and not by the Chief, Bureau of Securities, to recover the gains of illegal securities practices. It is not included in § 71, which describes violators' civil liabilities to securities purchasers; that section contemplates claims by individual investors, but provides that its remedies are "in addition to any other rights or remedies that may exist in law or equity...." N.J.S.A. 49:3-71(h). It was included, however, in the Attorney General's prayer for "such other relief as the Court deems equitable and just."
The equity powers of the United States District Courts have long been held to include issuance of orders to disgorge illegal *447 profits in statutory proceedings to enjoin regulatory violations. In Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), the Supreme Court upheld an order requiring a landlord to stop collecting rents greater than permitted by wartime price controls, and also to disgorge all excess amounts already collected. The Supreme Court reasoned that, where the public interest is involved, the District Courts' inherent equitable powers include disgorgement orders as ancillary remedies to afford complete relief, in the absence of clear and valid legislative restriction of that power. Id. at 398-400, 66 S.Ct. at 1089-1090, 90 L.Ed. at 1337-1338.
Disgorgement orders have been similarly approved in enforcement proceedings under the Housing and Rent Act of 1946, United States v. Moore, 340 U.S. 616, 71 S.Ct. 524, 95 L.Ed. 582 (1951), and under the Fair Labor Standards Act of 1938, Mitchell v. De Mario Jewelry, Inc., 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960).
The authority to order disgorgement of unlawful gains is inherent in the historic equity jurisdiction of the Superior Court, Chancery Division. Cf. Crowe v. DeGioia, 90 N.J. 126, 137-138, 447 A.2d 173 (1982). The principle was explained in Securities and Exch. Comm'n v. Texas Gulf Sulphur Co., 446 F.2d 1301 (2d Cir.), cert. denied, 404 U.S. 1005, 92 S.Ct. 562, 30 L.Ed.2d 558 (1971), reh'g denied, 404 U.S. 1064, 92 S.Ct. 733, 30 L.Ed.2d 753 (1972), that the general equity powers of the United States District Courts authorized them to order disgorgement of the profits of securities law violations, and that the SEC had the authority to seek that remedy. Id. at 1307-1308. Just as in the present case, the regulating securities statute provided other sanctions, including private remedies, and the government agency was afforded powers to prevent violations. The statute did not expressly authorize suit for *448 disgorgement, but nothing in the legislation restricted the historic jurisdiction of equity. Similar rulings had already been made in other Circuits. See cases collected, Id. at 1307.[12] We adopt the result as a sound and desirable one for proceedings under New Jersey's Uniform Securities Law.
In only one reported state case, to our knowledge, has the question been presented whether an administrator of securities regulation has the power to seek, and the trial court has the power to order, disgorgement of profits illegally obtained in violation of the Uniform Securities Act. In reliance on the federal precedents we have mentioned, the Oklahoma Supreme Court recognized a disgorgement remedy as authorized by the inherent equity jurisdiction of its trial courts. State ex rel. Day v. Southwest Mineral Energy, Inc., 617 P.2d 1334 (Okla. 1980). State v. Buckeye Finance Corp., 54 Ohio St.2d 407, 377 N.E.2d 502 (1978), and Wee Mac Corporation v. State, 301 So.2d 101 (Fla. Dist. Ct. App. 1974), are not to the contrary. They disapproved of suits by securities law administrators for rescission of unlawful transactions and restitution to the investors. Those were the remedies of individual investors, and went beyond the disgorgement order approved by Oklahoma.
Because the Chancery Division proceedings did not produce sanctions that served the punishment goals of retribution and deterrence, they did not constitute criminal proceedings for double jeopardy purposes. Thus, the prosecution of the indictment is not constitutionally barred, and the indictment should not have been dismissed.
Reversed.
*449 STERN, J.A.D. (concurring).
Although I join the court's opinion, I find it necessary to set forth my own additional views concerning some of the issues projected by this appeal.
This case deals with whether the prosecution of a criminal indictment is barred under the double jeopardy clauses by virtue of the imposition of a judgment in a proceeding commenced by a civil complaint. The double jeopardy clause of the Fifth Amendment provides that no person "be twice put in jeopardy of life or limb" "for the same offence". Our State double jeopardy clause, N.J. Const. (1947), Art. I, par. 11, has been interpreted to be co-extensive with the federal provision, and to provide no greater protection than the Fifth Amendment. See e.g. State v. DeLuca, 108 N.J. 98, 101-102, 527 A.2d 1355 (1987); cert. den. sub nom New Jersey v. DeLuca, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); State v. Barnes, 84 N.J. 362, 370, 420 A.2d 303 (1980). However, "[t]hat interpretation evolved ... in the context of multiple prosecutions, not multiple penalties", and "[a]t some point [our Supreme Court] may be obliged" to determine whether the New Jersey Constitution provides greater protection for our citizens than application of the Fifth Amendment with respect to multiple punishment. State v. Churchdale Leasing Inc., 115 N.J. 83, 107, 557 A.2d 277 (1989). As the court's opinion notes, this case deals with that aspect of the double jeopardy right which "protects against multiple punishments for the same offense." See North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2080-81, 23 L.Ed.2d 656, 664-65 (1969); State v. Barnes, supra, 84 N.J. at 370, 420 A.2d 303.
Our Supreme Court has already held that a civil fraud action seeking the appointment of a receiver, restraints, recission of sales and the award of damages cannot be restrained pending a criminal prosecution. That holding, in State v. Kobrin Securities Inc., 111 N.J. 307, 544 A.2d 833 (1988), was rendered by the Court over defendant's objections based upon Fifth Amendment *450 grounds. The Court, speaking through Justice O'Hern, held that the civil case should not have been placed on the inactive calendar pending the criminal prosecution, as "[t]he State has no burden to demonstrate its right to proceed with civil discovery." 111 N.J. at 316, 544 A.2d 833. Rather:
The defendants must demonstrate how the discovery burdens imposed upon them outweigh the public interest. The trial court shall thereafter exercise its discretion to mete out justice in both the civil and criminal litigations. It has full authority to manage the course of discovery. The criminally-accused defendants are in the most sensitive position and the order of discovery from them may be scheduled to follow discovery from the other civil defendants, who must themselves choose whether to exercise the [Fifth Amendment] privilege in these proceedings or to incur the consequent civil burdens. [111 N.J. at 317, 544 A.2d 833].
In essence, the Court held that there was no reason "why the investors and the public should continue to be prejudiced indefinitely by the defendants' requests for delay" and that the civil proceedings seeking to protect the public should not be adjourned pending the criminal prosecution. However, the Court noted that should the government endeavor to use the civil discovery process to enhance the pending criminal proceedings, "`such unfairness and want of consideration for justice'" would require a remedy. 111 N.J. at 317, 544 A.2d 833 (quoting cases). Kobrin Securities did not involve the issue which we face; it did not even involve the disposition of either the criminal or civil proceeding.
In United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the United States Supreme Court held "that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 448-49, 109 S.Ct. at 1901-1902, 104 L.Ed.2d at 502. Defendants rely on Halper in support of their double jeopardy claim here, but Halper, and the cases discussed therein, including Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 *451 (1943), reh'g denied, 318 U.S. 799, 63 S.Ct. 756, 87 L.Ed. 1163 (1943), and Rex Trailer Company v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956), all dealt with purported civil proceedings after a defendant was subjected to a criminal prosecution. Clearly, therefore, jeopardy had attached by virtue of the criminal prosecution for an "offense", and, as Halper reiterated, "multiple punishment" cannot be "for the same offense." See United States v. Halper, supra, 490 U.S. at 441, 109 S.Ct. at 1897, 104 L.Ed.2d at 497. But see also United States v. Marcus Schloss & Co., Inc., 724 F. Supp. 1123, 1127 (S.D.N.Y. 1989) (no double jeopardy bar to criminal prosecution following consent judgment in SEC civil proceeding arising out of same conduct; consent order entered with knowledge of pending criminal inquiry).
Thus, while the double jeopardy clause has not been interpreted to prohibit the imposition of both civil and criminal sanctions for the same conduct, see Helvering v. Mitchell, supra, 303 U.S. at 399, 58 S.Ct. at 633, 82 L.Ed. at 922; In re Garay, 89 N.J. 104, 111, 444 A.2d 1107 (1982) ("the double jeopardy provisions of both [the State and federal] constitutions permit imposition of both criminal and civil penalties for the same act or course of conduct"), whether "multiple punishment" and "the same offense" are involved depends on substance  irrespective of labels and irrespective of chronology of proceedings. United States v. Marcus Schloss & Co., Inc., supra, 724 F. Supp. at 1126. Speaking of Helvering v. Mitchell, supra, the Supreme Court in United States v. Halper said:
While the opinion makes clear that the Government may impose both a criminal and a civil sanction with respect to the same act or omission, and that whether a given sanction is criminal is a matter of statutory construction,[1] it simply does not address the question we face today: whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes `punishment' for the purpose of double jeopardy analysis. If anything, Justice Brandeis' carefully crafted opinion for the Court intimates that a civil sanction may constitute *452 punishment under some circumstances. As noted above, the Court distinguished between the Double Jeopardy Clause's prohibition against `attempting a second time to punish criminally' and its prohibition against `merely punishing twice.' Id., [303 U.S.] at 399, 82 L.Ed. 917, 58 S.Ct. 630 [at 633]. The omission of the qualifying adverb `criminally' from the formulation of the prohibition against double punishment suggests, albeit indirectly, that `punishment' indeed may arise from either criminal or civil proceedings. [490 U.S. at 443, 109 S.Ct. at 1899, 104 L.Ed.2d at 498].
Speaking further of Mitchell, U.S. ex rel. Marcus v. Hess and Rex Trailer, supra, Justice Blackmun speaking for the Court in Halper stated:
The relevant teaching of these cases is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis. These cases do not tell us, because the problem was not presented in them, what the Constitution commands when one of those imprecise formulas authorizes a supposedly remedial sanction that does not remotely approximate the Government's damages and actual costs, and rough justice becomes clear injustice. [490 U.S. at 446, 109 S.Ct. at 1900-1901, 104 L.Ed.2d at 500].
Further, the Court stated with respect to the double jeopardy analysis that:
In making this assessment, the labels `criminal' and `civil' are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. Ibid. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads ... Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied to the individual case serves the goals of punishment. [490 U.S. at 447-448, 109 S.Ct. at 1901, 104 L.Ed.2d at 501 (footnote and citations omitted)].
Clearly, there is no double jeopardy problem posed by the judgment in the civil case removing certain property from defendants and restraining them from engaging in the securities business. See State v. Kobrin Securities, supra. Nor would there be any problem posed by the $3,100,000 disgorgement order, especially if the suit had been commenced by the private parties injured by the defendant's wrongdoing. See United States v. Halper, supra, 490 U.S. at 451, 109 S.Ct. at 1903, 104 L.Ed.2d at 503 ("[t]he protections of the Double *453 Jeopardy Clause are not triggered by litigation between private parties," at least in the absence of a proceeding which is a "sham" endeavor by the government to obtain discovery and the like through civil litigants). But even the $3,100,000 "disgorgement" order goes beyond that which is absolutely necessary to protect the public interest without potential jeopardy to the criminal case  i.e., appointing a receiver and having defendant's assets turned over for safekeeping to prevent distribution, insolvency and ultimate recovery by the victims.
The difficult issue with respect to the double jeopardy analysis is posed by the fact that the "civil sanctions" and penalties for security fraud violations embodied in N.J.S.A. 49:3-70(b) are premised on the very same acts which can give rise to criminal prosecution and punishment under N.J.S.A. 49:3-70(a). Here, the Attorney General sought declaratory and injunctive relief by the appointment of a receiver pursuant to N.J.S.A. 49:3-69(c) and (d), and penalties of $200.00 for each illegal act pursuant to N.J.S.A. 49:3-70(b). He also appears to have asked the trial judge to enter the $3,100,000 disgorgement order.[2] Further, the State spent approximately $100,000 less than the penalty recovered to prosecute the civil action. But see United States v. Halper, supra, 490 U.S. at 450-51, 109 S.Ct. at 1903, 104 L.Ed.2d at 503-504.
The State contends that, despite the section title, "criminal penalties" subsection (b) of N.J.S.A. 49:3-70 provides for a civil penalty, collectible pursuant to N.J.S.A. 2A:58-1 et seq. and R. 4:67, and was designed only as a civil sanction. See Kimmelman v. Henkels & McCoy Inc., 108 N.J. 123, 132-33, 527 A.2d 1368 (1987). See also Sawran v. Lennon, 19 N.J. 606, 615, 118 A.2d 10 (1955); Department of Conservation and Eco. Dev., Div. of Fish and Game v. Scipio, 88 N.J. Super. 315, 319-320, 212 A.2d 184 (App.Div. 1965) certif. denied 45 N.J. 598, 214 A.2d *454 32 (1965). While the title of § 70(b), does not control, see N.J.S.A. 1:1-6, the remedy or sanction imposed does control with respect to whether there was "punishment" for an "offense" which was otherwise subject to prosecution under § 70. Compare In re Garay, 89 N.J. 104, 111-112, 444 A.2d 1107 (1982).
The difficult question in this case is not based upon the remedy sought or judgment entered. The constitutional question arises only because the remedy was developed and judgment entered while a criminal proceeding was still pending. The government can seek "the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case, the Double Jeopardy Clause simply is not implicated." United States v. Halper, 490 U.S. at 450, 109 S.Ct. at 1903, 104 L.Ed.2d at 503. Nor, as noted previously, does the double jeopardy clause preclude "a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment." Id. at 451, 109 S.Ct. at 1903. But, as evidenced by this case, there is substantial danger of jeopardy consequences, when a "civil" enforcement or penalty proceeding is processed to judgment while a related criminal prosecution is pending.
We have previously stated in New Jersey that even disposition of a nonindictable motor vehicle violation may preclude an indictable criminal prosecution for the same conduct or transaction. See State v. DeLuca, supra, 108 N.J. at 109, 527 A.2d 1355; State v. Dively, 92 N.J. 573, 458 A.2d 502 (1987). See also Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) (remand to determine if failure to reduce speed motor vehicle violation, disposed of prior to manslaughter prosecution, involves same "offense"); Brown v. Ohio, 432 U.S. 161, 166-169, 97 S.Ct. 2221, 2225-2227, 53 L.Ed.2d 187, 194-196 (1977) (conviction of a lesser included offense generally bars trial for greater offense; applying test of Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. *455 306, 309 (1932) (whether each violation "requires proof of a fact which the other does not")); Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), reh'g denied 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 79 (1970) (double jeopardy application to indictable after municipal court disposition). The risks of disposing of nonindictable offenses prior to related indictables are clear because of their possible jeopardy consequences. Cf. State v. Muniz, 118 N.J. 319, 571 A.2d 948 (1990); State v. Yoskowitz, 116 N.J. 679, 563 A.2d 1 (1989); see also State v. Gregory, 66 N.J. 510, 333 A.2d 257 (1975); R. 3:15-1 (joinder of criminal offenses); Reports of the Criminal Practice Committee, 122 N.J.L.J. 116 (1988) (proposing permissive joinder of related nonindictables with indictables to prevent jeopardy consequences); 125 N.J.L.J. 414 (1990) (requesting no action on proposal pending decision in Muniz); 103 N.J.L.J. 418 (1979) (separate statement considering same question). These concerns also warrant prudent attention to the scope of a civil proceeding prior to the disposition of a related indictable in order to prevent jeopardy consequences.
To that end, I note the comment of Justice Blackmun, speaking for a unanimous court in Halper,[3] that:
Nor does the decision [in Halper] prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature. See e.g. Missouri v. Hunter, 459 U.S. 359, 368-369, 74 L.Ed.2d 535, 103 S.Ct. 673 [679] (1983) (`Where ... a legislature specifically authorizes cumulative punishment under two statutes ... the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial'). [490 U.S. 450-451, 109 S.Ct. at 1903, 104 L.Ed.2d at 503].[4]
I have previously voiced my concern about the absence of a procedure authorizing at least permissive joinder of indictable *456 offenses and related nonindictable matters even after the 1979 amendment of N.J.S.A. 2C:1-8b which made clear that there was no mandatory joinder of indictables and nonindictables so as to trigger the statutory bars which flow from the lack of joinder. See N.J.S.A. 2C:1-8b, c; 2C:1-10a; note, L. 1979 c. 178, § 6; see also Separate Statement to the 1979 Criminal Practice Committee, supra; "Preserving Jurisdiction Under the Code," 7 Crim.J.Q. 1, 3 (1979). Almost twelve years later, it seems even more necessary that nonindictable and indictable offenses be permissively joined on application of either party, generally with the defendant's objection to a prosecutorial request giving rise to waiver of any double jeopardy claim. Cf. Jeffers v. United States, 432 U.S. 137, 152, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168, 181 (1977). The same principle should permit the joinder of civil and criminal proceedings when the possibility of multiple "punishment" is involved. Towards that end, our Supreme Court now requires a judge to make fact-finding on a lesser included nonindictable motor vehicle offense while the jury considers the criminal charge in a joint proceeding. See State v. Muniz, supra, 118 N.J. at 332, 571 A.2d 948. See also State v. DeLuca, supra, 108 N.J. at 111, 527 A.2d 1355.[5] As a minimum, except for the granting of necessary emergent relief, I would require simultaneous entry of sentence and judgment on the related causes.[6]Halper teaches us that the double jeopardy clause prohibits multiple punishment in a "criminal" proceeding and a subsequent "civil" proceeding where the *457 latter bears no rational relationship to governmental losses and therefore constitutes "punishment". I would avoid the jeopardy issue by case management of the civil and criminal proceedings by a single judge who is aware of possible jeopardy consequences and who monitors developments as they unfold. In essence, I adhere to my views that as the doctrine of double jeopardy does not prohibit multiple punishment in the same proceeding, see State v. Graham, 245 N.J. Super. 257, 584 A.2d 878 (App.Div. 1991); State v. Anaya, 238 N.J. Super. 31, 568 A.2d 1208 (App.Div. 1990). Therefore, to the extent possible, joinder of proceedings and simultaneous imposition of punishment (subsequent to any necessary temporary injunction or receivership) would avoid many of the issues which raise jeopardy concerns in this case.[7]
Subject to these reservations, I join the court's opinion and vote to reverse.
NOTES
[1] An additional defendant and an additional count were dismissed for reasons irrelevant to the issues before us.
[2] The pretrial order was not part of the record submitted to us. After oral argument, we obtained it from the Chancery Division, Ocean County.
[3] We do not comment on the form of the disgorgement order. Compare the order entered in Securities and Exch. Comm'n v. Texas Gulf Sulphur Co., 446 F.2d 1301, 1307 (2d Cir.), cert. denied, 404 U.S. 1005, 92 S.Ct. 562, 30 L.Ed.2d 558 (1971), reh'g denied, 404 U.S. 1064, 92 S.Ct. 733, 30 L.Ed.2d 753 (1972).

We also do not say whether it is more correct for the State to seek a penalty in plenary proceedings in the Superior Court, or to assess a penalty in administrative proceedings and then sue to collect if the penalties are not paid. See Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 90, 312 A.2d 497 (1973).
[4] The Commissioners have approved a 1985 Uniform Securities Act intended to supercede the 1956 Uniform Act. Three states have adopted it. 7B U.L.A. 53 (Supp. 1988).
[5] United States v. Marcus Schloss & Co., 724 F. Supp. 1123 (S.D.N.Y. 1989), is not contrary. There, defendant consented to the civil penalties in a settlement which permitted prosecution of parallel criminal proceedings. Cf. United States v. Hall, 730 F. Supp. 646 (M.D.Pa. 1990).
[6] Cf. In re Kaplan, 178 N.J. Super. 487, 494, 429 A.2d 590 (App.Div. 1981) (dealing with the civil-criminal dichotomy in the context of the constitutional bar to ex post facto laws).
[7] Section 409 of the Uniform Act is headed "[criminal penalties]." It contains only criminal sanctions, however, and not New Jersey's monetary penalties for violations irrespective of wilfulness.
[8] See Sawran v. Lennon, 19 N.J. 606, 611-612, 118 A.2d 10 (1955).
[9] See also Atkinson v. Parsekian, 37 N.J. 143, 154-156, 179 A.2d 732 (1962) (acquittal in Municipal Court of Title 39 violation does not bar administrative license suspension, the purpose of which is remedial); 3 LaFave & Israel, Criminal Procedure § 24.1(b), at 61-62 (1984).
[10] Effective after the violations involved in this case, § 70(b) was amended to increase maximum penalties for first violation to $10,000 and for subsequent violations to $20,000. L. 1985, C. 405, § 13. We need not say whether the amendment sufficiently alters the equation to require the conclusion that the § 70(b) penalties are primarily criminal in nature.
[11] Cf. In re Garay, supra, 89 N.J. at 114-115, 444 A.2d 1107, where the question was whether a per-violation civil penalty applied to a large number of small Medicaid frauds yielded a penalty so disproportionate to the harm caused by a defendant that the penalty was unreasonable. See Kimmelman, supra, 108 N.J. at 133, 527 A.2d 1368. A civil penalty of "unreasonable" size has a punitive, rather than remedial effect.
[12] Interestingly, defendants argued, as they do here, that the disgorgement order was essentially punitive and not restitution. The Court of Appeals disagreed. Cf. Kvitka v. Board of Registration in Medicine, 407 Mass. 140, 551 N.E.2d 915, 918-919 (1990) (monetary exactions not permitted in the absence of victims suffering financial loss).
[1] The characterization of a statute as criminal or civil is usually a question of statutory construction. See Kimmelman v. Henkels & McCoy Inc., 108 N.J. 123, 132, 527 A.2d 1368 (1987) (footnote inserted within quote).
[2] We hold, and I agree, that there is inherent equitable jurisdiction to enter the order; my concern is only with the timing of judgment when a criminal matter is pending.
[3] Justice Kennedy concurred separately.
[4] My views as to the impact of legislative intent with respect to multiple dispositions in the same proceeding have recently been developed in State v. Graham, 245 N.J. Super. 257, 584 A.2d 878 (App.Div. 1991) and State v. Anaya, 238 N.J. Super. 31, 568 A.2d 1208 (App.Div. 1990).
[5] I need not address herein trial issues where defendant is entitled to a trial in the civil as well as the criminal cause. Nor do I address the "entire controversy" doctrine independent of my views concerning joinder.
[6] It is my understanding, for example, that judgments on sentencing for violations of N.J.S.A. 2C:41-2 (racketeering) and imposition of penalties and forfeiture under N.J.S.A. 2C:41-3 and 2C:41-4 (RICO) are entered simultaneously.
[7] As this case was presented to us exclusively under the double jeopardy doctrine, I have not considered whether the due process clause or doctrine of "fundamental fairness" precludes prosecution of the indictment which was dismissed. But see and compare, e.g., State v. Tropea, 78 N.J. 309, 314-316, 394 A.2d 355 (1978); State v. Yoskowitz, supra; State v. Gregory, supra.