**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1030-19

STATE OF NEW JERSEY,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

THOMAS FAGAN,

    Defendant-Respondent/
    Cross-Appellant.

_____

Argued March 16, 2022 – Decided July 22, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 13-05-0098.

William P. Cooper-Daub, Deputy Attorney General, argued the cause for appellant/cross-respondent (Matthew J. Platkin, Attorney General, attorney; William P. Cooper-Daub, of counsel and on the briefs).

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for respondent/cross-appellant (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the briefs).

Brian F. McDonough, Assistant Attorney General, argued the cause for amicus curiae Christopher W. Gerold (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Brian F. McDonough, Victoria A. Manning, Evan A. Showell, Andrew H. Yang, Deputy Attorneys General, on the brief).

PER CURIAM

Defendant Thomas Fagan was the Chief Executive Officer of two companies engaged in the research and development of medical devices. A jury convicted him of ten counts of failure to file individual and corporate tax returns in violation of N.J.S.A. 54:52-8 and -10. The jury could not reach a verdict on four second-degree charges arising from other alleged malfeasance: misapplication of entrusted property, N.J.S.A. 2C:21-15 (count twelve); theft, N.J.S.A. 2C:20-3(a) (count thirteen); money laundering, N.J.S.A. 2C:21-25(b)(2)(a) (count fourteen); and misconduct by a corporate official, N.J.S.A. 2C:21-9(c) (count fifteen).

Thereafter, the trial court dismissed counts twelve to fourteen, reasoning that they were barred by principles of double jeopardy. The court dismissed count fifteen, finding that it was moot because of the dismissals of counts twelve to fourteen. The State appeals, contending that the trial court erred in dismissing counts twelve to fifteen.

Defendant appeals, arguing that the trial court erred in not charging a lesser-included offense related to the charges for failure to file tax returns. He also contends that the court erred in not granting his motion to acquit and dismiss his two convictions for failure to file corporate tax returns for 2011, arguing that he had ceased having authority at the companies before those returns were due to be filed.

We reject defendant's lesser-included-offense arguments and affirm eight of his convictions for failure to file individual and corporate tax returns. We hold that the trial court erred in not granting defendant a judgment of acquittal on the charges that he had failed to file corporate tax returns in 2011 because there was no evidence that he had responsibility for the tax filings for that year. We also hold that the trial court erred in dismissing the four counts on which the jury did not reach a verdict. Defendant waived his double-jeopardy argument and, even if it is considered, the criminal charges are not precluded by separate civil claims that the State had brought against defendant. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

I.

We discern the facts from the evidence at trial. In 1999, defendant established a company that was ultimately named Energex Systems, Inc.

3

(Energex). In 2009, defendant formed a limited liability corporation to acquire Arbios Systems, Inc. (Arbios). Energex and Arbios were both start-up companies working to develop medical devices. Accordingly, neither company generated profits, and they relied on investors to provide the funds for their operations.

Defendant served as the Chief Executive Officer (CEO) and principal operating officer for both Energex and Arbios. In those capacities, he was involved in raising monies from investors. He was also the only person authorized to control the companies' bank accounts, and he made all financial decisions for the companies.

Following investigations, defendant was prosecuted both civilly and criminally for actions and omissions related to his conduct in operating Energex and Arbios. In 2011, the Attorney General, on behalf of the Chief of the Bureau of Securities (the Bureau), filed a civil complaint against defendant and others. The civil complaint charged defendant with making material misstatements or omissions in connection with securities transactions, N.J.S.A. 49:3-52(b); engaging in fraud or deceit in connection with securities transactions, N.J.S.A. 49:3-52(c); acting as an unregistered securities agent, N.J.S.A. 49:3-56(a); selling unregistered securities, N.J.S.A. 49:3-60; and unjust enrichment. The

A-1030-19

civil complaint also alleged that Energex and Arbios had employed defendant as an unregistered securities agent.

In 2012, the trial court in the civil action granted partial summary judgment against defendant, holding that he had acted as an agent without registration and had sold unregistered securities. The following year, in May 2013, the parties to the civil securities litigation agreed to a consent judgment resolving that action. Under the civil consent judgment, defendant agreed to pay a $1 million civil penalty under N.J.S.A. 49:3-70.1 and to be permanently enjoined from certain securities-related activities. The consent judgment also stated that Energex and Arbios would pay over $10 million in restitution to investors.

In April 2013, a month before the consent judgment was filed in the civil action, a grand jury indicted defendant for four criminal charges related to the failure to file tax returns and for filing a fraudulent tax return. In a superseding indictment returned in May 2013, defendant was charged with fifteen crimes: three counts of third-degree failure to file a personal tax return for the years 2007, 2008, and 2009, N.J.S.A. 54:52-8 (counts one through three); third-degree filing a fraudulent personal tax return for the year 2010, N.J.S.A. 54:52-10 (count four); four counts of third-degree failure to file corporate tax returns for

A-1030-19

Energex for the years 2008, 2009, 2010, and 2011, N.J.S.A. 54:52-8 (counts five through eight); three counts of third-degree failure to file corporate tax returns for Arbios for the years 2009, 2010 and 2011, N.J.S.A. 54:52-8 (counts nine through eleven); second-degree misapplication of entrusted property, N.J.S.A. 2C:21-15 (count twelve); second-degree theft, N.J.S.A. 2C:20-3(a) (count thirteen); second-degree money laundering, N.J.S.A. 2C:21-25(b)(2)(a) (count fourteen); and second-degree misconduct by a corporate official, N.J.S.A. 2C:21-9(c) (count fifteen).

The criminal trial was conducted in 2016. At trial, the State presented evidence that defendant took hundreds of thousands of dollars from Energex and Arbios beyond his disclosed compensation. Defendant used that money for personal expenses, including paying gambling debts and making political contributions. While defendant was taking monies out of Energex and Arbios, the companies were having financial difficulties in paying employees and expenses.

Defendant did not file personal New Jersey income tax returns for the years 2007, 2008, and 2009. A State tax agent testified that, based on his calculation, defendant owed the State over $53,000 in unpaid taxes, penalties, and interest.

A-1030-19

Energex did not file New Jersey corporate tax returns for the tax years 2008, 2009, 2010, or 2011. Arbios did not file New Jersey corporate tax returns for the tax years 2009, 2010, or 2011. The State presented evidence that defendant was the corporate official responsible for filing tax returns up to 2010. In the summer of 2011, however, defendant was removed as CEO of Energex and Arbios.

After hearing the evidence presented at trial, the jury convicted defendant of ten counts of failure to file personal and corporate tax returns (counts one to three and five to eleven). The jury acquitted defendant of filing a fraudulent personal tax return in 2010 (count four). The jurors were unable to reach a unanimous verdict on the four second-degree charges against defendant in counts twelve to fifteen.

At the end of the State's case, defendant moved for acquittal. The trial judge deferred ruling on that motion until after the jury rendered its verdict. The judge ultimately denied the acquittal motion.

In March 2018, defendant was sentenced to an aggregate term of five years of probation with forty-five hours of community service. He was also ordered to pay restitution of $53,919.96.

7

In May 2019, defendant moved to preclude a new trial on the four counts on which the jury had been unable to reach a verdict. He argued that the remaining counts were barred by principles of double jeopardy.

On October 22, 2019, a motion judge, who was not the trial judge, granted defendant's motion and dismissed counts twelve through fifteen. The motion judge reasoned that counts twelve, thirteen, and fourteen were barred by principles of double jeopardy. The judge also reasoned that those charges should have been joined with the civil charges in the civil litigation under the entire controversy doctrine. The motion judge dismissed count fifteen as moot, reasoning that the corporate-misconduct allegations relied on proof of the charges in counts twelve through fourteen. The State appeals from the order dismissing counts twelve through fifteen. Defendant appeals challenging his convictions.

## II.

The State filed its notice of appeal first. Defendant filed his notice of appeal a few days later. We address defendant's arguments first.

On defendant's appeal, he makes two arguments:

> POINT I – A NEW TRIAL SHOULD OCCUR ON THE THIRD-DEGREE TAX CHARGES BECAUSE THE TRIAL COURT NEGLECTED TO INSTRUCT THE JURY ON A LESSER-INCLUDED OFFENSE THAT

DID NOT REQUIRE THE INTENT TO EVADE PAYMENT AND THAT WAS CLEARLY SUPPORTED BY THE EVIDENCE THAT DEFENDANT'S TAX OBLIGATION WOULD HAVE BEEN NEGLIGIBLE HAD HE FILED RETURNS.

POINT II – THE COUNTS CHARGING DEFENDANT'S FAILURE TO FILE CORPORATE TAX RETURNS FOR 2011 SHOULD BE DISMISSED BECAUSE THE STATE FAILED TO SUFFICIENTLY PROVE AT TRIAL THAT DEFENDANT REMAINED A CORPORATE OFFICER AT THE TAX DEADLINE IN 2012.

A.    The Failure to Charge a Lesser-Included Offense.

A trial court has an obligation to ensure that the instructions given to a jury are accurate and complete.  State v. Purnell, 126 N.J. 518, 531 (1992). Instructions should serve as a "road map to guide the jury" in its deliberations, State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Martin, 119 N.J. 2, 15 (1990)), and provide a "comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find," State v. Green, 86 N.J. 281, 287-88 (1981).

A trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."  N.J.S.A. 2C:1-8(e).  Accordingly, "to justify a lesser included offense instruction, a rational basis must exist in the evidence for a jury

to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense." State v. Savage, 172 N.J. 374, 396 (2002). A trial court should give a lesser-included instruction sua sponte "only where the facts in evidence 'clearly indicate' the appropriateness of that charge." State v. Funderburg, 225 N.J. 66, 81 (2016) (quoting Savage, 172 N.J. at 397). In other words, "[o]nly if the record clearly indicates a lesser-included charge—that is, if the evidence is jumping off the page—must the court give the required instruction." State v. Denofa, 187 N.J. 24, 42 (2006).

When a defendant fails to request a lesser-included charge, appellate courts review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Funderburg, 225 N.J. at 79 (quoting R. 2:10-2). Plain error in jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

Defendant was charged with ten counts of violating N.J.S.A. 54:52-8, which makes it a third-degree crime for failing to file a required New Jersey tax

return "with the intent to defraud the State or to evade, avoid or otherwise not make timely payment of any tax, fee, penalty, interest or any part thereof which shall be due pursuant to . . . any State tax law." At trial, defendant did not request that the court give the jury a lesser-included charge. Instead, on appeal, defendant now argues that the trial court should have sua sponte instructed the jury on N.J.S.A. 54:52-6(a), which makes it a disorderly-persons offense to "recklessly or negligently" fail to file "any return or report required by any State tax law."

Defendant argues that the jury could have acquitted him of the third-degree crimes while convicting him of the lesser disorderly-persons offense. He points out that his accountant prepared and gave him individual tax returns that showed that had he filed his individual returns, he would have received an aggregate refund of $9.00. He also argues that had tax returns been filed for the two corporations, the companies would have owed only a $500 annual franchise fee.

In making those arguments, defendant ignores the State's evidence. The State presented evidence that defendant took hundreds of thousands of dollars from the two corporations and ultimately that evidence justified the imposition of over $53,000 in restitution to the Division of Taxation. In other words, the

11

State's evidence showed that defendant had acted intentionally and willfully in not filing individual or corporate tax returns. When considered in full context, the evidence for the lesser charge did not "jump[] off the page." Denofa, 187 N.J. at 42.

B.    The Corporate Tax Returns for 2011.

In his second argument, defendant contends that the trial court should have granted him a judgment of acquittal on counts eight and eleven, which charged him with failure to file corporate tax returns for the tax year 2011. Defendant asserts that the State failed to prove that he remained a corporate officer for Energex or Arbios or that he had the authority or ability to cause the companies to file their 2011 tax returns. In that regard, he points out that in August 2011, an injunction in the civil action prevented him from exercising control over the companies. He also argues that the 2011 corporate tax returns were due to be filed in April 2012. See N.J.A.C. 18:7-11.7 (providing that tax returns based on an accounting year are not due until April 15 of the following year); see also N.J.S.A. 54:10A-15 (setting April 15 of the following year as the date for paying the annual franchise tax).

Defendant moved for a judgment of acquittal at the close of the State's case. The trial court did not immediately rule on that application. Defendant

then renewed his motion for acquittal after the jury verdict. The trial court denied the motion, reasoning that defendant had been president and CEO of both companies during the tax years of 2008 into 2011 and that no tax returns had been filed for either corporation for those years. Accordingly, the tax court reasoned that there was sufficient evidence to support the jury's verdict and defendant was not entitled to a judgment of acquittal.

The standard for evaluating a motion for a judgment of acquittal is set out in Rule 3:18-1 (when made after the close of the State's case) and Rule 3:18-2 (when made after the jury has returned a guilty verdict). The question is whether there is sufficient evidence to allow a jury to find that the State's charges have been established beyond a reasonable doubt, viewing the evidence in its entirety, be it direct or circumstantial, and giving the State the benefit of all favorable inferences. State v. Fuqua, 234 N.J. 583, 590-91 (2018); State v. Reddish, 181 N.J. 553, 620 (2004); State v. Reyes, 50 N.J. 454, 459 (1967). The focus of that inquiry is not "the worth, nature, or extent (beyond a scintilla) of the evidence, but only . . . its existence, viewed most favorably to the State." State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974). Appellate courts use the same standard when reviewing a decision on a motion for acquittal. State v. Josephs, 174 N.J. 44, 81 (2002).

A-1030-19

Having reviewed the evidence submitted at trial, we are constrained to vacate the convictions under counts eight and eleven.  Those counts required proof that defendant failed to file the corporate tax returns of Energex in 2011 (count eight) and Arbios in 2011 (count eleven).  The State failed to present any evidence of defendant's involvement with either company after August 2011.  Therefore, there was no evidence to show beyond a reasonable doubt that defendant had responsibility for filing the 2011 tax returns for either company.  In short, the State did not submit any evidence that would prove beyond a reasonable doubt that defendant had failed to file the two corporations' 2011 tax returns.  See State v. Medina, 147 N.J. 43, 49 (1996).  Consequently, defendant was entitled to a judgment of acquittal on counts eight and eleven and we vacate the convictions on those counts.

### III.

On its appeal, the State makes four arguments:

> POINT I – THE JUDGE ERRED BY ADDRESSING THE DOUBLE-JEOPARDY ARGUMENT, WHICH DEFENDANT HAD WAIVED.

> POINT II – THE JUDGE ERRED BY FAILING TO APPLY THE CORRECT DOUBLE-JEOPARDY TESTS.

14

A. The Judge Erred in Finding the Unresolved Criminal Counts Concerned the "Same Offense" as the Civil Securities Claims.

B. The Judge Erred in Finding that the Civil Monetary Penalties to which Defendant Consented Were a Criminal Punishment.

POINT III – THE JUDGE ERRED TO THE EXTENT HE RELIED ON OTHER GROUNDS TO DISMISS COUNTS TWELVE THROUGH FOURTEEN.

POINT IV – THE JUDGE ERRED BY DISMISSING COUNT FIFTEEN AS MOOT.

A. The Dismissal of Counts Twelve to Fifteen.

In March 2018, just after defendant was sentenced on the counts on which the jury had found defendant guilty, the trial court set a date for the trial on counts twelve through fifteen, the counts on which the jury could not reach a verdict. Thereafter, defendant moved to dismiss counts twelve to fifteen. He argued those counts should be dismissed because (1) the double-jeopardy clause prevented punishment beyond the penalty from the civil securities litigation; (2) defendant's conviction on count eleven was a lesser-included offense of count fifteen; and (3) it would be fundamentally unfair because the criminal charges should have been joined with the civil securities claims.

After hearing argument, the motion judge dismissed counts twelve through fifteen. The judge held that counts twelve, thirteen, and fourteen were

15

barred on the principles of double jeopardy. The judge also reasoned that those counts should have been joined with the civil litigation and, therefore, they were also barred by the entire controversy doctrine. The judge dismissed count fifteen as moot.

1.    The Waiver.

For the first time on appeal, the State argues that defendant waived his double-jeopardy defense by not raising it before the 2016 trial. Defendant responds that the State should be precluded from making a waiver argument because it failed to raise the argument before the motion judge.

Rule 3:10-2(c) states that the defense of double jeopardy must be raised before trial. See State v. Allah, 170 N.J. 269, 282 (2002) (explaining that the "plain language of the [r]ule provides that the defense of double jeopardy must be raised by motion before trial and that the failure to present the defense constitutes a waiver"). Rule 3:10-2(c) allows for relief from the waiver provision if defendant can demonstrate good cause. Ibid.; see also State v. Del Fino, 100 N.J. 154, 161 (1985) (explaining that a successful showing of good cause depends on the circumstances surrounding the delay and the merits of the underlying assertion).

Defendant argues that counts twelve through fourteen are barred under the double-jeopardy clause because of the civil securities litigation. He is not arguing that double jeopardy attached based on anything that happened at the trial. Consequently, under the plain language of the rule, his double-jeopardy defense was waived because he never raised it before the 2016 trial. Indeed, he waited over six years before first raising double jeopardy as a defense because he first filed his motion in May 2019, but he settled the civil securities action in May 2013.

Defendant points out that he was not given an opportunity to establish good cause for his delay because the State did not make a waiver argument before the motion judge. Before us, however, defendant has not pointed to anything that would constitute good cause for the six-year delay. Consequently, we hold that defendant waived his double-jeopardy defense by not raising it in a timely manner. Nevertheless, we address the substantive merits of defendant's double-jeopardy arguments.

2.    Double Jeopardy.

The double-jeopardy clauses of the federal and New Jersey Constitutions provide that no person shall be tried twice for the same criminal offense. U.S. Const. amend. V; N.J. Const. art. I, ¶ 11. The New Jersey Supreme Court "has

consistently interpreted the State Constitution's double-jeopardy protection as coextensive with the guarantee of the federal Constitution." State v. Miles, 229 N.J. 83, 92 (2017) (citing State v. Schubert, 212 N.J. 295, 304 (2012)).

"The Double Jeopardy Clause contains three protections for defendants. It protects against (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" Ibid. (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). In examining the first two protections, the focus is on "whether the second prosecution is for the same offense involved in the first." Id. at 93 (quoting State v. Yoskowitz, 116 N.J. 679, 689 (1989)).

Before 2017, New Jersey used two tests to determine whether offenses were the same for double jeopardy purposes: the same-elements test and the same-evidence test. Id. at 93-96. The same-elements test involves a review of whether the statutes at issue require proof of identical elements. Id. at 93 (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)). Under the same-evidence test, a court reviews whether the second prosecution would rely on the same evidence used to prove an earlier charge. Ibid. (citing Illinois v. Vitale, 447 U.S. 410, 421 (1980)).

A-1030-19

In 2017, the New Jersey Supreme Court adopted the same-elements test as "the sole double-jeopardy analysis." Id. at 96. Nevertheless, the Court recognized that its decision established a new rule of law and applied the new same-elements standard prospectively to offenses committed after May 2017. Id. at 99. Because defendant committed his offenses between 2007 and 2011, we will evaluate his double-jeopardy contentions under both tests.

(i)     The Same-Elements Test.

In the civil securities action, defendant was charged with (1) making materially false and misleading statements or omitting material facts in connection with the offer and sale of securities, N.J.S.A. 49:3-52(b) (count one); (2) two counts of engaging in acts or practices which operated as a fraud or deceit on a person in connection with the offer, sale, or purchase of securities, N.J.S.A. 49:3-52(c) (counts two and three); (3) acting as an unregistered securities agent, N.J.S.A. 49:3-56(a) (count four); and (4) selling unregistered securities, N.J.S.A. 49:3-60 (count six). The Bureau also made a claim for unjust enrichment, which required showing that defendant had received a benefit and that retention of the benefit without payment would be unjust. Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007).

In counts twelve to fourteen in the criminal action, defendant was charged with (1) misapplication of entrusted property, N.J.S.A. 2C:21-15; (2) theft, N.J.S.A. 2C:20-3(a); and (3) money laundering, N.J.S.A. 2C:21-25(b)(2)(a).

The claims asserted in the civil securities action do not have the same elements as the criminal charges alleged in counts twelve through fourteen of the criminal action. Indeed, a side-by-side comparison of the elements shows that there is almost no overlap of the elements required to convict defendant on the criminal charges as compared to the civil securities charges. Most importantly, the criminal charges all required proof of defendant's intent to commit the unlawful act. Thus, an analysis of defendant's double-jeopardy assertion under the same-elements test shows that the criminal charges are not the same offenses as the civil charges.

(ii)   The Same-Evidence Test.

The civil securities action was resolved, and the parties agreed to enter a consent judgment. Before the consent judgment was entered, the court in the civil securities litigation had granted partial summary judgment against defendant on the charges of acting as an unregistered securities agent and selling unregistered securities. The evidence on which the civil court relied was proof that defendant had controlled Energex and Arbios, that Energex had sold

A-1030-19

unregistered securities, and that defendant had acted as an unregistered securities agent in New Jersey. The court found Energex had acted as an unregistered agent in selling unregistered securities but did not find that Arbios had done so. It denied the portion of the State's motion seeking partial summary judgment as it pertained to Arbios because of a factual dispute. The evidence used in the civil securities action would not be the same evidence needed to prove the criminal charges of misapplication of entrusted property, theft, and money laundering.

The same-evidence test is met only if the evidence used to establish liability in the first action is the "sole evidence in the second." DeLuca, 108 N.J. at 107. The evidence the State presented in defendant's first criminal trial involved eight days of testimony with many exhibits. The evidence that established liability in defendant's civil litigation was a four-page certification with attached exhibits. The evidence in the civil and criminal proceedings were not the same. Consequently, applying the same-evidence test demonstrates that the criminal charges were not the same offenses as the civil securities claims.

(iii)  The Civil Monetary Penalty.

The third protection given by the double-jeopardy clause is that it prohibits "multiple punishments for the same offense." Miles, 229 N.J. at 92

21

(quoting Pearce, 395 U.S. at 717). The protection applies only to the imposition of multiple criminal punishments for the same offense. Hudson v. United States, 522 U.S. 93, 99 (1997); State v. Eisenman, 153 N.J. 462, 468 (1998). Consequently, "'[t]he Double Jeopardy Clause's prohibition against multiple punishments . . . is not generally implicated by penalties imposed in civil and administrative proceedings.'" Eisenman, 153 N.J. at 468 (alterations in original) (quoting State v. Black, 153 N.J. 438, 443 (1998)). Accordingly, the government "may impose both a criminal and a civil sanction in respect to the same act or omission"; it is only when the sanction is effectively criminal that the double-jeopardy implications are triggered. Helvering v. Mitchell, 303 U.S. 391, 399 (1938) (Brandeis, J.).

"[M]onetary penalties have historically been regarded as civil, not criminal, penalties." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 132-33 (1987). Nevertheless, if a statutory scheme is sufficiently "punitive either in purpose or effect," it may "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." Hudson, 522 U.S. at 99 (alteration in original) (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980), and Rex Trailer Co. v. United States, 350 U.S. 148, 154 (1956)).

Determining whether a sanction is civil or criminal is primarily a matter of statutory interpretation. In re Garay, 89 N.J. 104, 112 (1982). The Legislature's characterization of whether a penalty is civil or criminal generally governs "unless there is 'the clearest proof' that the sanction is punitive either in purpose or effect." Kimmelman, 108 N.J. at 132 (quoting Garay, 89 N.J. at 112). Courts consider seven factors in determining whether a statute's penalties are "so punitive as to transform them into criminal sanctions":

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment–retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.
>
> [Kimmelman, 108 N.J. at 132 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)).]

In the civil securities action, defendant consented to a $1 million civil monetary penalty under N.J.S.A. 49:3-70.1 (Section 70.1). The securities law expressly refers to Section 70.1 penalties as "civil penalties." N.J.S.A. 49:3-56 ("the bureau chief may bring an administrative or court action pursuant to

section 29 of [N.J.S.A. 49:3-70.1], to seek and obtain civil penalties for violations of this section").

We have previously held that an earlier version of the securities law made it clear that the Legislature intended to create a civil penalty. State v. Darby, 246 N.J. Super. 432, 441 (App. Div. 1991). In Darby, we held that a prior version of the securities law did not trigger double jeopardy when a defendant was subsequently prosecuted criminally. Id. at 448. We discern no change of intent in the Legislation given the amendments that have been made since we conducted our analysis in Darby. Although the civil penalties under Section 70.1 have increased to $10,000 for a first violation and $20,000 for a second or subsequent violation, those increases do not make the penalties criminal in nature. We had previously held in Darby that "[t]here is no affirmative disability connected with" the civil monetary penalties in the securities law. Id. at 442. Similarly, Section 70.1 monetary penalties "have historically been regarded as civil, not criminal, penalties." Kimmelman, 108 N.J. at 132-33. Section 70.1's "penalties are imposed without a finding of scienter." Darby, 246 N.J. Super. at 442. Furthermore, the behavior sanctionable under Section 70.1 is not already a crime. And even where Section 70.1 sanctions may be imposed on conduct

that may be criminal, that "fact is insufficient to render the money penalties . . . criminally punitive." Hudson, 522 U.S. at 105.

The monetary penalties in Section 70.1 also serve primarily as civil penalties that help to regulate the securities market as opposed to punitive penalties. Indeed, the civil penalties collected under Section 70.1 are deposited into the "Securities Enforcement Fund," which the Division of Consumer Affairs uses to administer the securities law and fund investigations of civil violations. N.J.S.A. 49:3-66.1. We have also previously explained that the securities laws' civil sanctions serve the "rationally connected alternate purpose" of "help[ing] [to] defray the cost of government investigation and enforcement." Darby, 246 N.J. Super. at 443. Finally, the monetary penalties called for in Section 70.1 are not excessive in relationship to its non-punitive purpose.

In that last regard, we reject the motion judge's analysis that focused primarily on the size of the civil penalty. As already noted, we do not deem the penalties of $10,000 and $20,000 as so excessive as to overcome the Legislature's clear intent that those penalties were to serve a civil, as opposed to a criminal, purpose. In short, an analysis of the seven Mendoza-Martinez factors establishes that the Section 70.1 penalties are civil and not criminal.

25

Finally, we note that defendant himself acknowledged that the penalty imposed in the consent judgment entered in the civil securities action was civil. Although we do not deem that consent order to act as an equitable estoppel, we deem it as a legitimate acknowledgment that the penalty being imposed in the civil action was civil. We further note that when defendant agreed to the consent order, he had already been indicted in the criminal matter and, thus, was aware that he was facing criminal charges beyond the civil charges.

IV.

In summary, on defendant's appeal we (1) reject his arguments concerning the failure to charge a lesser-included offense and affirm eight of his convictions for failure to file individual and corporate tax returns; and (2) hold that the trial court erred in not granting defendant a judgment of acquittal on the charges that he failed to file corporate tax returns in 2011 and reverse and vacate his convictions on counts eight and eleven. On the State's appeal, we hold that the trial court erred in dismissing counts twelve through fifteen and remand for a trial on those counts.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1030-19